IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

SCOTT NIVER,

       Plaintiff,

vs.

TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

       Defendant.

No. C 01-3064-MWB

MEMORANDUM OPINION AND
ORDER REGARDING THE
PLAINTIFF'S MOTION FOR
ADVANCE EVIDENTIARY RULING
AND DEFENDANT'S MOTION TO
BIFURCATE TRIAL

_____

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   A. Admissibility Of Evidence Going To Both Liability And Damages . . . . . 9
      1.    Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . 9
      2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   B. Plaintiff's Use Of Excerpts Of Videotaped Depositions . . . . . . . . . . . 16
      1.    Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . 16
      2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   C. Evidence Of Financial Condition Of Parent Company . . . . . . . . . . . 24
      1.    Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . 24
      2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   D. Travelers's Motion To Bifurcate Trial . . . . . . . . . . . . . . . . . . . . . . 32

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In this action for first-party bad faith for failure to pay workers compensation benefits, the court entered summary judgment in the plaintiff's favor on liability issues, prompting the plaintiff to seek an advance evidentiary ruling on various matters prior to the trial on damages issues. The questions raised in the plaintiff's motion concern the admissibility of evidence that goes to both liability and damages, particularly punitive or exemplary damages; the plaintiff's ability to use excerpts of videotaped depositions of the insurer's adjustors in his case-in-chief, when those adjustors will be present at the trial; and the extent to which the plaintiff can obtain and present to the jury financial information concerning the insurer's parent company for purposes of punitive damages. The insurer disputes the plaintiff's position on each of these issues. In addition, the insurer has moved to bifurcate trial on compensatory damages and punitive damages issues. Therefore, in the interest of an efficient and fair trial on damages issues, the court will attempt to resolve the parties' disputes pretrial, to the extent that the court is able to do so.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here a detailed dissertation of all of the facts, disputed and undisputed, in this case. Rather, most of the factual background of importance here is set forth in the court's ruling on the parties' motions for summary judgment. *See Niver v. Travelers Indem. Co. of Illinois*, 412 F. Supp. 2d 966, 968-72 (N.D. Iowa 2006). Nevertheless, the court will set forth sufficient facts to provide some context for the present ruling.

For present purposes, suffice it to say that plaintiff Scott Niver was formerly employed by Curries Manufacturing (Curries) in Mason City, Iowa. Defendant Travelers Indemnity Company of Illinois (Travelers) was and is the workers compensation insurance

carrier for Curries. However, Curries itself had authority to decide whether to pay workers compensation claims up to a certain dollar amount, because of its "retention," *i.e.*, deductible. At the time giving rise to Niver's claim of bad faith failure to pay workers compensation benefits, Niver had already made and received benefits pursuant to workers compensation claims for, among other things, a hernia in 1995 and a knee injury in 1999. The central issue in the present dispute, however, was the compensability of a workers compensation claim for groin problems that Niver reported to Curries on October 12, 2000, just shortly after his return to work after his knee problems. The parties agree that Niver did not report a new injury on October 12, 2000; rather, he asserted that the groin problem was related to one or more of his prior workers compensation claims. Nevertheless, the report of his complaint about groin pain that Curries made to Travelers indicated a "date of injury" of October 12, 2000. Niver also demanded benefits, including weekly benefits, medical benefits, and, eventually, penalty benefits, that would only have been available for a new injury claim.

Travelers denied Niver's claim for groin pain for the first time by letter dated October 26, 2000. The parties then engaged in an extended dispute over the compensability of the claim. Eventually, on June 28, 2001, Niver filed three petitions for workers compensation benefits with the Iowa Workers Compensation Commission, one asserting that Travelers should have paid workers compensation benefits for the groin problems in October 2000 under the 1995 hernia claim, one asserting that benefits for those problems should have been paid under the 1999 knee claim, and one asserting that benefits for those problems should have been paid under a claim for a new injury on October 12, 2000. On July 2, 2001, Niver also filed a petition in Iowa District Court for Cerro Gordo County alleging Travelers's bad faith failure to pay his workers compensation

claim for the October 2000 groin problems. Travelers subsequently removed that action to this court.

This action was stayed, however, pending resolution of claims in front of the Iowa Workers Compensation Commission. Although Travelers's adjustors eventually recognized that all of the record evidence was relating the October 2000 groin problem to the 1995 hernia claim, and that medical benefits for that problem should have been paid pursuant to the "lifetime benefits" available on the 1995 hernia claim, Travelers continued to dispute the claim, in large part because Niver had filed three separate workers compensation petitions and his bad faith action. By decision dated November 20, 2002, the Iowa Workers Compensation Commission ordered Travelers to pay past and future medical benefits, mileage, and costs for the October 2000 groin problem pursuant to the 1995 hernia claim. Although Travelers pursued an administrative appeal, Travelers also lost that appeal, and ultimately paid the administrative award on November 26, 2003. Notwithstanding resolution of the workers compensation claims before the Commission, Niver's lawsuit asserting Travelers's bad faith failure to pay workers compensation benefits continued in this court.

## B. Procedural Background

Much of the extensive procedural background in this case is also detailed in the court's summary judgment ruling. *See Niver*, 412 F. Supp. 2d at 972-73. However, the pertinent part of that background for present purposes relates to the claims asserted in Niver's bad faith action and this court's ruling on the final round of summary judgment motions addressing Niver's bad faith claims.

In its form at the time of the final round of dispositive motions, Niver's Complaint alleged, in Count I, a claim of first-party bad faith for failure to pay workers compensation

benefits for the groin pain that Niver reported in October 2000 pursuant to the 1995 hernia claim; in Count II, a claim for exemplary damages for the intentional, reckless or willful and wanton disregard of Niver's rights under the Workers' Compensation Act; and in Count III, a claim of first-party bad faith for pursuing an administrative appeal of the November 20, 2002, arbitration decision awarding Niver benefits for medical bills and expenses for the October 2000 groin problem pursuant to the 1995 hernia claim. *See* Fourth Amended Petition At Law (docket no. 79). Travelers denied these claims and asserted various affirmative defenses. *See* Answer (docket no. 80).

Travelers filed its Second Amended And Substituted Motion For Summary Judgment on November 23, 2005 (docket no. 163), which asserted that Travelers was entitled to summary judgment in its favor on all counts in Niver's action for bad faith. On December 15, 2005, Niver resisted Travelers's motion (docket no. 164), and also filed his own Motion For Summary Judgment (docket no. 165), which if granted, instead of Travelers's motion, would have left only damages issues for trial. Travelers filed a resistance to Niver's motion for summary judgment on January 6, 2006 (docket no. 168).

In a Memorandum Opinion filed February 6, 2006 (docket no. 176), *see Niver v. Travelers Indem. Co. of Illinois*, 412 F. Supp. 2d 966, 968-72 (N.D. Iowa 2006), the court denied Travelers's November 23, 2005, Second Amended And Substituted Motion For Summary Judgment. However, the court granted Niver's December 15, 2005, Motion For Summary Judgment (docket no. 165) on liability issues, leaving only damages issues for trial. Somewhat more specifically, on the "objective" element of Niver's bad faith claim—that is, that the insurer had no reasonable basis for denying the plaintiff's claim—the court found unpersuasive as a matter of law Travelers's contention that Niver's claim for workers compensation benefits was "fairly debatable" simply because Niver initially asserted that he was entitled to benefits under one or more of three different

workers compensation claims. Instead, the court held that the pertinent question was whether there was *a point at which* Travelers no longer had a reasonable basis to deny Niver's claim for benefits pursuant to *any* of Niver's workers compensation claims. The court also found that the notes from Niver's groin surgery in December 2000, which were provided to Travelers in March 2001, demonstrated that the most likely cause of the groin pain was the apparent neuroma and scar tissue resulting from the 1995 hernia surgery, that the post-surgery pathology report confirmed the neuroma, and that subsequent medical records, all of which were also provided to Travelers, focused on the 1995 hernia surgery as the cause or primary cause of the October 2000 groin pain. The court also found that, as a matter of law, these surgery and post-surgery records and other medical records available to Travelers by July 2001 rendered the compensability issue "undebatable," because Travelers could no longer "dispute on any logical basis" that *a* proximate cause of Niver's October 2000 groin pain was the neuroma and scar tissue from the 1995 hernia surgery, even if the medical records recognized other possible causes as well. Thus, as a matter of law, there was no reasonable basis for Travelers's denial of that claim. *Id.* at 988-92. As to the "subjective" element—that the insurer knew or had reason to know that its denial was without reasonable basis—the court held that, as a matter of law, adjustors for Travelers knew by July 2001 that Niver's claim for groin pain in October 2000 should have been paid under the 1995 hernia claim, *i.e.*, that Travelers's continued denial of the claim after July 2001 was without reasonable basis. *Id.* at 992.

The court found that these determinations left for trial the question of damages on Niver's bad faith claim in Count I of his Complaint, which alleges Travelers's bad faith failure to pay workers compensation benefits for the October 2000 groin pain pursuant to the 1995 hernia claim. The court also held Count III, which alleges Travelers's bad faith appeal of the administrative decision, involved an allegation of *subsequent* bad faith, such

that it was mooted or subsumed by summary judgment in Niver's favor on his bad faith claim in Count I. Therefore, because the court granted Niver's motion for summary judgment on Count I of his Complaint, and denied Travelers's motion for summary judgment, the court directed that this matter proceed to jury trial only on the issue of Niver's damages, including his claim for exemplary damages in Count II, from Travelers's bad faith failure to pay his claim for medical benefits for his October 2000 groin pain pursuant to the 1995 hernia claim. *Id.* at 992-93.

By order dated February 15, 2006 (docket no. 189), the court certified its summary judgment ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), cancelled the March 6, 2006, trial date for the remaining claims, and stayed all proceedings in this case pending disposition of any interlocutory appeal. In addition, the February 15, 2006, order denied all pending motions in limine without prejudice to reassertion pursuant to the terms of a subsequent order setting a "back up" trial date. Notwithstanding the stay, by order dated February 17, 2006 (docket no. 191), the court did permit Niver to file a Fifth Amended Complaint. Pursuant to the order staying the case, the court entered an order on February 24, 2006 (docket no. 193), setting a "back up" trial date for June 5, 2006.

Travelers did seek leave of the Eighth Circuit Court of Appeals to pursue an interlocutory appeal of the court's summary judgment ruling. However, on March 9, 2006, the court received a copy of the March 2, 2006, order of the Eighth Circuit Court of Appeals denying Travelers's petition for writ to file interlocutory appeal. *See* docket no. 195. Thus, the way was cleared for trial on damages on the "back up" trial date of June 5, 2006.

On March 14, 2006, shortly after the Eighth Circuit Court of Appeals denied Travelers's petition for leave to pursue an interlocutory appeal, Niver filed his Motion For Advanced Ruling On Limited Evidentiary Issues Prior To Final Pretrial Conference

(docket no. 196), which is now before the court.�«[1]  As mentioned at the outset of this ruling, Niver's Motion For Advanced Ruling raises three evidentiary issues:  (1) the admissibility of evidence that goes to both liability and damages, particularly punitive or exemplary damages; (2) whether Niver can use excerpts of videotaped depositions of Travelers's adjustors in his case in chief, when those adjustors will be present at the trial; and (3) the extent to which Niver can obtain and present to the jury financial information concerning Travelers's parent company for purposes of punitive damages.  After an extension of time to do so, Travelers responded to Niver's motion on April 11, 2006 (docket no. 199).  In addition, on May 2, 2006, Travelers filed a Motion To Bifurcate Compensatory And Punitive Damages Issues For Trial (docket no. 203).  Niver has not yet responded to that motion, but the court finds that the motion is nevertheless ripe for disposition, because Travelers relies substantially on the arguments in its response to Niver's Motion For Advanced Ruling in support of its motion to bifurcate.

The court has found it unnecessary to set oral arguments on the motions now before the court.  Therefore, the court will consider those motions on the basis of the parties' written submissions.

---

[1]Although Travelers states in its resistance to Niver's motion that other motions in limine are pending, Travelers is mistaken.  Pursuant to the order dated February 15, 2006, *no other motions in limine are currently pending.*  The parties' deadline to renew any motions in limine is fourteen days before the rescheduled Final Pretrial Conference on May 24, 2006, as stated in the order setting the "back up" trial date.  *See* Order of February 24, 2006 (docket no. 193).  That deadline is fast approaching.  However, this ruling may obviate the need for the parties to renew or assert other motions in limine.

## II. LEGAL ANALYSIS

Rule 104 of the Federal Rules of Evidence, upon which Niver's present motion is based, provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of some or all of the evidentiary questions presented in Niver's motion will likely serve the ends of a fair and expeditious presentation of the damages issues to the jury. Therefore, the court turns to consideration of Niver's specific evidentiary questions.

### A. Admissibility Of Evidence Going To Both Liability And Damages

### 1. Arguments of the parties

Niver contends that much of the evidence that he intends to offer at the damages trial is information regarding how Travelers "mishandled" his workers compensation claim based on groin pain and that, as such, it is relevant to the issue of punitive damages. By way of example, he identifies the evidence in question as including the following: (1) evidence that Travelers denied his claim fifteen days after it was filed without obtaining any medical records or medical opinions; (2) evidence of correspondence from Niver's counsel to Travelers relating Niver's groin pain back to the 1995 hernia claim; and (3) Travelers's adjustors' claim notes reflecting Travelers's understanding that Niver was

claiming that the groin pain related back to the 1995 hernia claim and that, on that basis, the claim should be paid. Niver contends that this evidence is necessary to show the jury what conduct by Travelers is being punished or discouraged by punitive damages and also necessary to show the extent to which Travelers willfully and wantonly disregarded Niver's rights. On the other hand, Niver contends that Travelers has indicated an intention to offer evidence of the reasons that Travelers handled the claim the way it did. Niver contends that Travelers should only be allowed to present evidence that mitigates the damage caused by its bad faith, and specifically, evidence that seems to lessen the extent of Niver's damages and the extent of Travelers's intentional, willful, and/or reckless behavior, but not evidence as to the reasons for denying the claim, because the court has already found those reasons insufficient as a matter of law. Otherwise, Niver argues that the evidence that Travelers presents could mislead or confuse the jury.

In response, Travelers argues that Niver is improperly trying to deny Travelers the right to present evidence about *why* it denied his claim. Travelers argues that the evidence that Niver seeks to use goes to the "degree of reprehensibility" and to satisfaction of the Iowa standard of proof for punitive damages, which is proof by "clear, convincing and satisfactory" evidence that Travelers acted with "willful and wanton" disregard for Niver's workers compensation rights. Assuming that Niver is entitled to offer the evidence that he wants to present, Travelers argues that there is no basis for the court to bar Travelers from offering evidence to the contrary. Thus, if the jury is allowed to consider Niver's evidence, Travelers contends that it should be allowed to present evidence on such matters as letters sent to Travelers by Niver's counsel shortly before filing his three workers compensation claims that show that Niver was demanding the payment of indemnity and penalty benefits that he could not recover pursuant to the 1995 hernia claim and other evidence that explains why Travelers acted as it did.

*2.    Analysis*

It appears that this part of Niver's motion is based on Rules 401 and 403 of the Federal Rules of Evidence:  Niver contends that evidence of *why* Travelers acted as it did is no longer relevant, within the meaning of Rule 401, where the court has found Travelers's explanation insufficient as a matter of law, but even if evidence of *why* Travelers acted as it did is somehow relevant, it should be excluded, because its potential to confuse or mislead the jury outweighs its probative value, within the meaning of Rule 403.  *See* FED. R. EVID. 401 (defining "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") & 403 (although relevant, evidence may be excluded if, for example, "its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury. . . .").  In making the appropriate determinations of relevance and the balance of probative value against potential for confusion or other prejudice, the court finds that the parties have not fully grasped the impact of the court's summary judgment ruling finding Travelers liable for bad faith denial of Niver's workers compensation claim for groin pain and permitting trial only on actual damages and punitive damages issues.

First,  contrary to Niver's assertion in his brief in support of his motion for advance evidentiary rulings, at no point in its ruling did this court "determin[e] that Travelers['s] actions were willful and wanton and/or in reckless disregard for Niver's statutory rights under Iowa's workers' compensation laws."  Plaintiff's Brief In Support Of Motion For Advanced Ruling On Limited Evidentiary Issues Prior To Final Pretrial Conference (docket no. 196-2) (Plaintiff's Brief) at 3.  In its summary judgment ruling, the court did determine that Travelers had acted in "bad faith" in denying Niver's workers compensation claim under the standards for proof of "bad faith" failure to pay an insurance claim under

Iowa law. *See, e.g., Bellville v. Farm Bureau Mutual Insurance Company*, 702 N.W.2d 468, 473 (Iowa 2005) ("To establish [the insurer's] bad faith, the plaintiff was required to prove (1) [the insurer] had no reasonable basis for denying the plaintiff's claim or for refusing to consent to settlement, and (2) the [insurer] knew or had reason to know that its denial or refusal was without reasonable basis. The first element is an objective one; the second element is subjective.") (citations omitted). However, those standards do not equate with the standards for awarding punitive damages under Iowa IOWA CODE § 668A.1(1)(a), which require Niver to prove "by a preponderance of clear, convincing, and satisfactory evidence" that Travelers's conduct "constituted willful and wanton disregard for [Niver's workers compensation] rights." *See* IOWA CODE § 668A.1(1)(a) (establishing the standards for an award of punitive or exemplary damages under Iowa law). Thus, the questions still before the jury concerning punitive damages are not merely the *extent* of Niver's damages and the *extent* of Travelers's intentional, willful, and/or reckless behavior, as Niver would have it, but whether Niver can prove to the necessary standard that Travelers's conduct was such that Niver is entitled to any punitive damages at all. To put it another way, although Travelers was unable to convince the court that its reasons for its conduct established, as a matter of law, that it had an objectively reasonable basis to debate Niver's workers compensation claim as of July 2001, and Niver was able to show the court that, as a matter of law, Travelers had, and knew that it had, no reasonable basis to debate the claim as of July 2001, that does not mean that Travelers's conduct necessarily failed, as a matter of law, the much more stringent standard for the imposition of punitive damages, proof that Travelers acted in willful and wanton disregard of Niver's rights. In short, there is a difference between knowingly unreasonable conduct, sufficient to show "bad faith," and willful and wanton conduct, required for the imposition of punitive damages. Therefore, Travelers's evidence concerning *why* it acted in the way

it did is still relevant to the questions of both Niver's entitlement to any punitive damages and the amount of any such punitive damages within the meaning of Rule 401, and because it is relevant, it is generally admissible under Rule 402.

Nor is the probative value of evidence showing *why* Travelers acted the way it did "substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury. . . ." *See* FED. R. EVID. 403. The court finds that any potential for prejudice, confusion of issues, or misleading the jury that this evidence might otherwise have can be adequately addressed by jury instructions that clarify the role of the jury and the issues remaining for trial and that distinguish between the determinations that the court has already made and those remaining for the jury. For example, Niver is entitled to an instruction explaining that the court has determined, as a matter of law, that Travelers acted in "bad faith" in denying Niver's workers compensation claim as of July 2001, but by the same token, Travelers is entitled to an instruction explaining that a finding of "bad faith" by the court does not necessarily mean that Travelers acted with willful and wanton disregard of Niver's workers compensation rights, and explaining further that Niver must prove by clear, convincing, and satisfactory evidence that Travelers acted with willful and wanton disregard of Niver's workers compensation rights in order to recover punitive damages.

The court finds that, as a second point of confusion, the parties are mistaken concerning the time frame for evidence relevant to damages and punitive damages for bad faith denial of Niver's claim. In its ruling on the final round of summary judgment motions, the court ruled that, as a matter of law, surgery and post-surgery records and other medical records available to Travelers *by July 2001* rendered the compensability issue "undebatable," because Travelers could no longer "dispute on any logical basis" that *a* proximate cause of Niver's October 2000 groin pain was the neuroma and scar tissue

from the 1995 hernia surgery, even if the medical records recognized other possible causes as well. *Niver*, 412 F. Supp. 2d at 990 (citing *Bellville*, 702 N.W.2d at 473, which states, "A claim is 'fairly debatable' when it is open to dispute on any logical basis."). Thus, the relevant "bad faith" conduct upon which any award of punitive damages can be based must be conduct that occurred *during and after July 2001*. Prior to that time, Travelers's denial of Niver's claim may have been "wrong," but it was not in "bad faith," because Travelers could still objectively "fairly debate" the claim and subjectively not know that there was no reasonable basis to deny Niver's claim. Thus, only evidence of Travelers's conduct *during and after July 2001* has any relevance to the determination of whether Travelers's "bad faith" caused damages or warrants an award of punitive damages. *See* FED. R. EVID. 401 (defining "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

More specifically still, while it is relevant that Niver submitted a claim for workers compensation benefits in October 2000 and that the parties disputed whether Travelers was required to pay that claim from the time it was filed to and after July 2001, the basis for the parties' dispute prior to July 2001 is irrelevant to damages *for "bad faith,"* because *there was no "bad faith" prior to July 2001*. Thus, Niver must prove what Travelers knew *during and after July 2001* and what Travelers did *during and after July 2001*, and Travelers is entitled to present evidence showing *why* it did what it did *during and after July 2001*. In contrast, the positions that the parties took concerning the compensability of Niver's claim prior to July 2001 simply are not relevant, and will be excluded, *unless those positions persisted during and after July 2001*. FED. R. EVID. 402 (irrelevant evidence is inadmissible).

One evidentiary issue specifically impacted by this analysis of the time frame for relevant evidence is Travelers's contention that it did not act in willful and wanton disregard of Niver's rights, because Niver was demanding workers compensation benefits to which he was not legally entitled if his groin pain was compensable only under the 1995 hernia claim and because Niver had filed three workers compensation claims based on the October 2000 groin pain as well as a lawsuit alleging Travelers's bad faith failure to pay workers compensation benefits for that pain. Niver's demands for compensation to which he was not entitled, if his claim was only compensable under the 1995 hernia claim, and the filing of his three workers compensation claims all occurred before July 2001, but those demands and workers compensation claims all remained at issue until February 2002, when Niver dismissed without prejudice his administrative petitions concerning the 2000 "new" claim and the 1999 "knee" claim. Thus, the pendency of these actions and demands *during and after July 2001* may be relevant to whether Travelers acted in willful and wanton disregard of Niver's rights *during and after July 2001*.

Niver argues that the court has already rejected these justifications for Travelers's conduct. Niver is correct that, in its ruling on the final round of summary judgment motions, this court rejected as a matter of law Travelers's contention that Niver's claim for workers compensation benefits was "fairly debatable" simply because Niver initially asserted that he was entitled to benefits that he ultimately could not recover, because he asserted that he was entitled to benefits under one or more of three different workers compensation claims, and because he had sued Travelers for bad faith failure to pay his workers compensation claim for his groin pain. *See Niver*, 412 F. Supp. 2d at 989. However, once again, the fact that Travelers was wrong as a matter of law on these points

15

does not mean that Travelers necessarily was acting in willful and wanton disregard of Niver's rights by asserting such a position.◻[2]

Thus, to the extent that Niver seeks to exclude evidence of Travelers's reasons for its conduct *after July 2001*, his motion must be denied. Evidence concerning what Travelers knew about Niver's claim as of July 2001 and thereafter, and what Travelers did and *why* during and after July 2001 is admissible at trial on damages issues, subject to appropriate jury instructions and other evidentiary challenges.

### B. Plaintiff's Use Of Excerpts Of Videotaped Depositions

### 1. Arguments of the parties

The second evidentiary issue that Niver raises in his motion for advance ruling is whether he can use excerpts of videotaped depositions of Travelers's adjustors in his case in chief, when those adjustors will be present at trial. Niver contends that playing portions of videotaped depositions is the most expeditious way to present his case and is allowable under the Federal Rules of Civil Procedure and Federal Rules of Evidence. More specifically, he contends that Rule 32(a)(1) of the Federal Rules of Civil Procedure states that a deposition may be used for any purpose permitted by the Federal Rules of Evidence, and that the depositions of Travelers's agents are admissible pursuant to Rule 801(d)(2) of the Federal Rules of Evidence as admissions by a party opponent. Next, he contends that

---

[2] Again, Travelers may be entitled to a jury instruction to the effect that the court's determination that Travelers was wrong on this point as a matter of law does not necessarily mean that Travelers was acting in willful and wanton disregard of Niver's rights. On the other hand, Niver may be entitled to a jury instruction stating the court's explanation for why Travelers was wrong as a matter of law, as such an instruction may assist the jury in determining whether Travelers was merely asserting a legally untenable position or was also acting in willful and wanton disregard of Niver's rights.

he may use the deposition excerpts in question pursuant to Rule 32(a)(2), because the witnesses in question are officers, directors, managing agents, or persons designated under Rule 30(b)(6). He also contends that the witnesses in question are at a distance greater than 100 miles from the place of trial, so that their videotaped depositions may be used at trial pursuant to Rule 32(a)(3)(B), whether or not the witnesses are parties or agents of parties. Although he concedes that he could subpoena these witnesses, he does not wish to incur the expense of witness fees for a single day's attendance. Therefore, if he cannot use the excerpts of these videotaped depositions, he contends that the court should order Travelers to make the witnesses available for trial and waive the witness fees. Ultimately, he argues that he is entitled to present his case in the manner he deems most effective, so that he should not be precluded from using depositions of his adversary in the manner he chooses.

Travelers responds that it does not object to Niver using excerpts of videotaped depositions, but what it does object to is Niver using those excerpts exclusively and as a bar to any live testimony at trial by those witnesses. Travelers asserts that, to the extent that the court determines that Travelers's employees may be allowed to testify at trial, Travelers intends to bring those individuals to testify live. Under those circumstances, Travelers concedes that Niver is free to use excerpts of videotaped depositions or excerpts of paper deposition transcripts for purposes of cross-examination of those witnesses. Travelers, thus, contends that there is no need for excerpts of videotaped depositions to be used in Niver's case-in-chief. Travelers also contends that the depositions were not noticed as depositions to perpetuate testimony for trial for witnesses unavailable at trial, but only as "discovery" depositions, so that Niver is making improper use of the depositions. While Travelers concedes that all of the witnesses in question were its employees, Travelers disputes that any of the witnesses in question were officers,

directors, or managing agents, or persons designated under Rule 30(b)(6), such that they fall within the admissibility provisions of Rule 32(a)(2). Finally, Travelers contends that Rule 32(a)(3)(B) is inapplicable, because all of the witnesses will be available to testify live at trial.

## 2. Analysis

The parties do not assert that it makes any difference to the disposition of this part of Niver's motion whether the deposition testimony in question is offered by showing videotaped excerpts or by reading excerpts from a printed transcript, and the court also finds that the format in which the deposition testimony is offered is not dispositive. Nor is the court persuaded that whether the depositions were noticed as "discovery" depositions or "depositions to perpetuate trial testimony" is determinative, because "[n]either the Rules of Civil Procedure nor the Rules of Evidence make any distinction between discovery depositions and depositions for use at trial." *Henkel v. XIM Prods., Inc.*, 133 F.R.D. 556, 557 (D. Minn. 1991). Rather, the court finds that what is controlling is Rule 32 of the Federal Rules of Civil Procedure, concerning use of "depositions" in court proceedings, and case law construing that rule.

Rule 32 provides for use of depositions at trial or during other court proceedings, in pertinent part, as follows:

(a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the

testimony of deponent as a witness, or for any other purpose permitted by the Federal Rules of Evidence.

(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

* * *

(B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition. . . .

FED. R. CIV. P. 32(a). "As a district court has broad discretion in handling these matters [concerning use of depositions pursuant to Rule 32], [the appellate court is] hesitant to reverse 'unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness. . . .'" *Lear v. Equitable Life Assur. Soc. of U.S.*, 798 F.2d 1128, 1135 (8th Cir. 1986) (quoting *Voegeli v. Lewis*, 568 F.2d 89, 96 (8th Cir. 1977), and citing *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979)).

Niver first asserts that the excerpts of videotaped depositions can be used at trial pursuant to Rule 32(a)(1). Travelers does not dispute that Rule 32(a)(1) authorizes Niver to use excerpts of videotaped depositions for purposes of impeachment. *See* FED. R. CIV. P. 32(a)(1) ("Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness. . . ."). However, Niver wants to

use such excerpts not just for impeachment, but in his case-in-chief in lieu of live testimony. He contends that Rule 32(a)(1) also permits him to use such deposition excerpts "as permitted by the Federal Rules of Evidence," *id.*, because the deposition excerpts are admissible as admissions of a party opponent within the meaning of Rule 801(d)(2) of the Federal Rules of Evidence. In *Wright v. Farmers Co-op of Arkansas and Oklahoma*, 681 F.2d 549 (8th Cir. 1982), the Eighth Circuit Court of Appeals addressed the circumstances under which an employee's statement can fall within Rule 801(d)(2)(D) in a lawsuit against his or her employer:

> The rule provides that a statement is not hearsay if it is offered against a party and is "a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). *See generally Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626, 629-31 (8th Cir. 1978); *Farner v. Paccar, Inc.*, 562 F.2d [518,] 526 [(8th Cir. 1977)]. The requirements of the rule were satisfied in this case. Hunt testified that he interviewed Sacks at the Co-Op service station and that Sacks was still in defendant's employ at the time the statement was recorded. Defendant presented no evidence to contradict this testimony. Further, there is no dispute that Sacks was being trained to handle propane and that he was the employee who filled the propane tank on plaintiffs' motor home. Thus, Sacks' statement, which dealt with his filling of the Wrights' propane tank, concerned a matter within the scope of his employment. Under Fed.R.Evid. 801(d)(2)(D), therefore, Sacks' original statement was not itself hearsay and was properly admissible.

*Wright*, 681 F.2d at 552-53. Here, to the extent that Niver can show that each of the witnesses was still in Travelers's employment at the time of the deposition, that the witnesses' statements concern a matter within the scope of their employment, that the statements dealt with conduct giving rise to the "bad faith" claim against Travelers, *see*

*id.*; FED. R. EVID. 801(d)(2)(D), and that the statements are "admissions," that is, "admission[s] to the facts in this case," and connected to the case by more than conjecture, *see In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) ("[T]he district court was well within its discretion in finding that the statement was not an admission to the facts in this case. The Appellants can only offer conjecture to connect the statement with the present case, and that is not sufficient for this court to override the judgment of the district court on this evidentiary issue."), then Niver may use the excerpts of videotaped depositions of these witnesses in his case-in-chief. Because no such showing has been made at this time, the court cannot now determine whether the excerpts of videotaped depositions are admissible pursuant to Rule 32(a)(1).

Therefore, the court turns to Niver's next contention, which is that Rule 32(a)(2) also permits use of the excerpts of the videotaped depositions of these witnesses. Rule 32(a)(2) provides that "[t]he deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose." FED. R. CIV. P. 32(a)(2); *Maddox v. Patterson*, 905 F.2d 1178, 1180 (8th Cir. 1990) ("The deposition of a party is available for use by an adverse party for any purpose.") (citing FED. R. CIV. P. 32(a)(2)). It is readily apparent that this provision of Rule 32 would permit broader use of the deposition excerpts than Rule 32(a)(1), as discussed above. Although Niver has identified the witnesses in question, and asserts broadly that portions of e-mails and depositions that he has attached to his motion "reflect that [the witnesses] all fall within the scope of Rule 32(a)(2)," Plaintiff's Brief at 5, in the absence of any coherent argument on Niver's part as to what Rule 32(a)(2) categories apply to which witnesses and what precise evidence demonstrates that such categories are

applicable to each of them, the court will neither speculate on these points nor comb Niver's attachments to his motion in an attempt to determine what category or categories may apply to what witnesses.■[3] Thus, the court cannot determine at this time whether or not the depositions of any of the witnesses fall within Rule 32(a)(2). Until such a showing is made, the court will not allow Niver to use excerpts of videotaped depositions of these witnesses pursuant to Rule 32(a)(2).

Niver's last and broadest contention is that the witnesses in question are at a distance greater than 100 miles from the place of trial, so that their videotape depositions may be used in their entirety at trial pursuant to Rule 32(a)(3)(B). However, the court concludes that this argument is premature. Some time ago, the Eighth Circuit Court of Appeals expressly recognized that "[t]he proximity of the witness to the place of trial [for purposes of Rule 32(a)(3)(B)] is to be determined as of the time at which the deposition is

---

[3]The court doubts that any of the witnesses whose testimony Niver intends to present through excerpts of videotaped depositions are "officers" or "directors" of Travelers. That leaves "managing agent" and "Rule 30(b)(6) designee" as possible statuses upon which Niver can rely. The Eighth Circuit Court of Appeals has explained that whether a witness is a "managing agent" within the meaning of Rule 32(a)(2) "depends on several factors, including whether the interests of the individual 'are identified with those of his principal and on the nature of his functions, responsibilities and authority. . . .'" *Crimm v. Missouri Pac. R. Co.*, 750 F.2d 703, 708 (8th Cir. 1984) (quoting *Terry v. Modern Woodmen*, 57 F.R.D. 141, 143 (W.D. Mo. 1972), which in turn cites *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94 (S.D.N.Y. 1968)); *see also Young & Assocs. Pub. Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 523 (D. Utah 2003) (identifying similar listings of the pertinent factors, citing *Stearns v. Paccar, Inc.*, 986 F.2d 1429 (10th Cir. 1993) (unpublished op.), which cites *Crimm*, and *Reed Paper Co. v. Proctor & Gamble Distrib. Co.*, 144 F.R.D. 2, 4 (D. Me. 1992)). Niver has made no attempt to demonstrate that these witnesses satisfy these factors. Likewise, while Niver asserts broadly that the witnesses are Rule 30(b)(6) designees, he does not clarify whether he means all or only some of the witnesses or for what purposes they were designated.

offered," *i.e.*, at the time the witness is called at trial.  *Hartman v. United States*, 538 F.2d 1336, 1345 (8th Cir. 1976) (citing 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 2146, p. 458); *see also Starr v. J. Hacker Co., Inc.*, 688 F.2d 78, 81 (8th Cir. 1982) (noting that deposition testimony of certain witnesses was properly admitted, because "[a]t no time has it been suggested that these witnesses were within 100 miles of the courthouse *at the time of trial.* . . .") (emphasis added).  Here, Travelers represents that the witnesses in question will all be present to testify at the courthouse when required; therefore, until and unless such a witness who is under subpoena or whom Travelers has guaranteed will be present is absent when called, Niver cannot present videotaped deposition testimony in lieu of live testimony pursuant to Rule 32(a)(3)(B).  *Id.*; *accord Young & Assocs. Pub. Relations, L.L.C.*, 216 F.R.D. at 524 (recognizing "the universal preference for live testimony" and "adopt[ing] the rule that 'the deponent's locations should be examined . . . beyond the time of offering to include any point during presentation of proponent's case when a trial subpoena could have been served,'" quoting *United States v. IBM Corp.*, 90 F.R.D. 377, 383 (S.D.N.Y. 1981), and holding that, "if the witnesses in question are made available as has been agreed for examination by the plaintiff in its case in chief, the Court will not allow deposition testimony in lieu of live testimony, even though at the time of depositions or trial the witness resides or is located at a greater distance than 100 miles from the courthouse").

Thus, the court cannot, at this time, grant Niver blanket permission to use the excerpts of videotaped depositions in his case-in-chief.  However, notwithstanding any of the foregoing, Niver remains free to use the excerpts of the videotaped depositions for purposes of impeachment.  *See* FED. R. CIV. P. 32(a)(1).

### C.  Evidence Of Financial Condition Of Parent Company

#### 1.    Arguments of the parties

The final issue raised in Niver's motion for advance evidentiary ruling concerns the extent to which Niver can obtain and present to the jury financial information concerning Travelers's parent company for purposes of punitive damages.  This is the issue to which Niver devotes the majority of his brief.◻[4]

Niver contends that he can make the necessary showings to "pierce the corporate veil" to establish exceptional circumstances that would make the financial records of the parent company, St. Paul Travelers Companies, Inc., relevant to the issue of punitive damages against Travelers.  Niver contends that the various Travelers subsidiaries are mere shell companies of their parent, St. Paul Travelers Companies, Inc.  He contends that, although the subsidiaries prepare separate financial statements, money flows freely between the corporations, with dividends paid by the subsidiaries to their parent corporation, and pooling of the capital and surpluses of various subsidiaries.  Moreover, he contends that the subsidiaries all have the same home office address and the same officers, directors, and actuary, and that each subsidiary is wholly-owned by St. Paul Travelers Companies, Inc., uses the same claims manual, and uses the same incentive program.  In addition, only the parent corporation provides benefit retirement plans, while

---

[4]On April 26, 2006, Niver also filed his Fifth Motion To Compel (docket no. 202), in which he seeks an order compelling Travelers to respond to his discovery requests for financial information regarding various Travelers entities to the extent of providing such information concerning Travelers Indemnity Company of Illinois, now known as Travelers Property Casualty Company of America, until the court rules on the admissibility of evidence concerning other entities.  Travelers has not yet resisted that motion.  Although this order may clarify some of the issues raised in that motion to compel, or even moot that motion, the court does not purport to rule on that motion at this time.

the subsidiaries have no legal obligation for those plans, and only the parent company files a federal income tax return, which includes all of the subsidiaries. Finally, Niver contends that there is an agreement among managers of these companies, all of whom are the same people, allocating income among the subsidiaries.

Under these circumstances, Niver contends that it is unjust to consider only the financial information for one of eighty-seven subsidiaries when determining punitive damages in this case. He also contends that it is fundamentally unfair to allow St. Paul Travelers to misrepresent who it is, depending upon the situation it faces, asserting, in one context, that it is a small insurance company such as Travelers Indemnity Company of Illinois, while simultaneously asserting, in a different context, that it is also the second largest writer of commercial property casualty insurance in the United States. He also contends that one goal of punitive damages, to discourage future misconduct of the kind at issue in the case, cannot be met if the jury is only allowed to consider the financial condition of one subsidiary rather than the company as a whole, where such conduct by the entire company should be discouraged.

In its cursory response, Travelers contends that the only relevant entity is Travelers Indemnity Company of Illinois, now known as Travelers Property Casualty Company of America, because that is the entity that wrote the workers compensation insurance policy for Curries. Travelers contends that, contrary to Niver's contentions, there is no evidence on the pertinent factors, which Travelers identifies as whether the subsidiary is undercapitalized, whether it lacks separate books, whether its finances are not kept separate from those of the parent, whether its individual obligations are paid by the parent rather than the subsidiary, whether the corporate identity of the subsidiary is used to promote fraud or illegality, whether corporate formalities for the subsidiary are not followed, and whether the subsidiary corporation is a mere sham.

2.    *Analysis*

Although Niver does not mention the requirement here, he elsewhere acknowledges that, under Iowa law, "[t]he mere allegation or assertion of a claim for punitive damages shall not form the basis for discovery of the wealth or ability to respond in damages on behalf of the party from whom punitive damages are claimed until such time as the claimant has established that sufficient admissible evidence exists to support a prima facie case establishing the requirements of [IOWA CODE § 668A.1(1)(a)]." *See* IOWA CODE § 668A.1(3).■[5] Implicit in Niver's present arguments that he can obtain and present financial information for both the specific subsidiary that is a defendant here and its parent company in support of his claim for punitive damages is a contention that he has made the necessary *prima facie* showing to discover the wealth or ability of this subsidiary and its parent company to respond in damages on behalf of the subsidiary.■[6] Based on a review of the record in support of summary judgment on Niver's bad faith claim, the court finds that Niver has made a sufficient *prima facie* showing of the requirements for an award of damages under IOWA CODE § 668A.1(1)(a) to proceed to discovery of the financial condition of the appropriate entity or entities. IOWA CODE § 668A.1(3). Somewhat more specifically, there was sufficient evidence in the summary judgment record from which a

---

[5]Niver makes that acknowledgment in his Fifth Motion To Compel (docket no. 202), filed April 26, 2006.

[6]In his Fifth Motion To Compel, Niver also contends that the court has *already made* the necessary finding that he has established a *prima facie* case for punitive damages in the court's summary judgment ruling by holding that this matter would proceed to trial on damages issues, including punitive damages. The court does not agree that it made any such ruling in its summary judgment decision, when the question of the sufficiency of Niver's *prima facie* case for punitive damages was not raised in the motions for summary judgment. Thus, the present ruling is the first in which the court has considered the issue.

reasonable juror *could find* that Travelers acted in willful and wanton disregard of Niver's workers compensation rights, although such a finding was not beyond dispute. *See* IOWA CODE § 668A.1(1)(a) (the claimant must prove "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another"). Thus, the question becomes, from what entity or entities can Niver obtain financial information that he can then present to the jury to support his claim for punitive damages?

Quite recently, in *Williams v. Security National Bank of Sioux City, Iowa*, 358 F. Supp. 2d 787 (N.D. Iowa 2005), this court also considered the question of whether the corporate veil between a subsidiary and a parent corporation should be pierced for purposes of determination of what punitive damages, if any, should be awarded against the subsidiary. *Williams*, 358 F. Supp. 2d at 802. The court found that the plaintiff was required to prove "exceptional circumstances" warranting piercing the corporate veil, but that there had been no attempt to satisfy the requirements for piercing the corporate veil, which the court identified as including the following: (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham. *Id.* (quoting *In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000), in turn citing *C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 598 (Iowa 1987), in turn citing *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 810 (Iowa 1978)). Therefore, the court excluded evidence of the defendant subsidiary's corporate relationship to its parent corporation and evidence of the financial condition of the parent corporation that the plaintiff might have intended to use as a basis for awarding punitive damages against

the subsidiary. *Id.* The situation here is different, because Niver has attempted to make a showing on pertinent factors. Therefore, the court will consider whether other Iowa decisions provide further insight into the pertinent factors for piercing the corporate veil between a subsidiary and a parent corporation, so that a jury can consider the financial condition of the parent for purposes of determining what punitive damages, if any, to award against the subsidiary.

Decades before this court's decision in *Williams*, the Iowa Supreme Court considered in *Team Central, Inc. v. Teamco, Inc.*, 271 N.W.2d 914 (Iowa 1978), what factors are pertinent to the determination of whether or not a corporate parent can be held liable for damages, including punitive damages, in a case against its wholly-owned subsidiary. *Team Central, Inc.*, 271 N.W.2d at 923 (considering the sufficiency of evidence to pierce the corporate veil between a subsidiary and a parent for purposes of damages). The Iowa Supreme Court considered factors similar to those later identified by this court in *Williams*, but explained, further, that "mere identity of stock ownership and corporate management is not alone sufficient to permit a piercing of the corporate veil." *Id.* Rather, the Iowa Supreme Court concluded that the determination should also be made based on "all other evidence in the case." *Id.* The court also held that evidence of fraud was relevant, but not essential. *Id.* The court explained that, while it was "true that the corporate veil doctrine is most frequently applied to avoid fraud . . . it is equally appropriate under other circumstances when one corporation is used as a mere sham for the other." *Id.* Similarly, in an even earlier decision, the Iowa Supreme Court had recognized that, "In the parent-subsidiary context we have stated the corporate entity should be disregarded where doing so would prevent the parent from perpetuating a fraud or injustice, evading just responsibility or defeating public convenience." *Briggs Transportation Company v. Starr Sales Company, Inc.*, 262 N.W.2d 805, 810 (Iowa 1978)

(citing *Inn Operators, Inc. v. River Hills Motor Inn Co.*, 261 Iowa 72, 84-85, 152 N.W.2d 808, 815-816 (1967); *Wescott & Winks Hatcheries v. F. M. Stamper Co.*, 249 Iowa 30, 35-36, 85 N.W.2d 603, 606-607 (1957)). In *Team Central*, the Iowa Supreme Court held that the trial court had properly submitted the question of whether the corporate veil should be pierced on the basis of "substantial evidence that [the subsidiary] was a mere sham for [the parent company] without real independent existence and that this arrangement was used to do severe, if not irreparable, harm to [the plaintiff] by the tortious conduct [involved in the case]." *Id.* In so holding, the court also expressly rejected the subsidiary's argument "that whether or not the corporate veil should be pierced is a question of law to be decided by the court, not the jury." *Id.* Thus, whether or not the corporate veil between a subsidiary and its parent corporation should be pierced is a jury question.

The Iowa Supreme Court's determination that whether or not the corporate veil should be pierced is a jury question has significant implications here, in light of IOWA CODE § 668A.1(3), which controls discovery and presentation to the jury of financial information of a party for purposes of determining punitive damages. *See* IOWA CODE § 668A.1(3) ("The mere allegation or assertion of a claim for punitive damages shall not form the basis for discovery of the wealth or ability to respond in damages on behalf of the party from whom punitive damages are claimed until such time as the claimant has established that sufficient admissible evidence exists to support a prima facie case establishing the requirements" for punitive damages in IOWA CODE § 668A.1(1)(a)). While this court cannot determine as a question of law whether or not the corporate veil should be pierced, the court can—and here must—determine on a pretrial motion whether Niver has made a sufficient *prima facie* showing that piercing the corporate veil is appropriate for the court to allow Niver to discover and to present to the jury financial information

about Travelers's parent company for purposes of the jury's determination of punitive damages.

Contrary to Travelers's assertion that there is no evidence on the pertinent factors for piercing the corporate veil, Niver asserts that there is copious evidence. The court agrees with Niver, at least to the extent that the court finds that Niver has made the necessary *prima facie* showing that the corporate veil between Travelers and its corporate parent should be pierced sufficient to submit that and other questions concerning punitive damages to the jury.

While Niver's showing that Travelers and other subsidiaries are wholly-owned by the parent company, St. Paul Travelers Companies, Inc., and that all of the subsidiaries and the parent company have the same management is not alone sufficient to permit a piercing of the corporate veil, *see Team Central, Inc.*, 271 N.W.2d at 923 , these factors are pertinent to the issue of whether the subsidiary is a mere sham. *See Williams*, 358 F. Supp. 2d at 802 (identifying as a pertinent factor whether the corporation is a mere sham); *Team Central, Inc.*, 271 N.W.2d at 923 (same). Moreover, while use of the corporate structure to perpetrate fraud is often relevant, evidence of such fraud is not required. *Team Central, Inc.*, 271 N.W.2d at 923. Rather, "all other evidence in the case" here includes financial arrangements that call into question whether the subsidiary that is a defendant here has any real independent existence. *See Team Central, Inc.*, 271 N.W.2d at 923 (considering whether the subsidiary had "any real independent existence," or was a mere sham). That evidence also calls into question whether Travelers, its parent, and other subsidiaries are using the corporate structure to perpetrate injustice, evade just responsibility, or defeat public convenience, by "compartmentalizing" liability, while sharing all assets among the subsidiaries and the parent. *See Briggs Transp. Co.*, 262 N.W.2d at 810 ("In the parent-subsidiary context we have stated the corporate entity

should be disregarded where doing so would prevent the parent from perpetuating a fraud or injustice, evading just responsibility or defeating public convenience.") (citing *Inn Operators, Inc.*, 261 Iowa at 84-85, 152 N.W.2d at 815-816; *Wescott & Winks Hatcheries*, 249 Iowa at 35-36, 85 N.W.2d at 606-607). The pertinent evidence here is evidence that the finances of the various subsidiaries of the St. Paul Travelers Companies are not kept separate, because resources are "pooled" and allocated among the subsidiaries by agreement, and evidence that some obligations of the subsidiaries are paid by the parent corporation, while the parent corporation files a single tax return for itself and all of its subsidiaries. *See Williams*, 358 F. Supp. 2d at 802 (noting that pertinent factors for piercing the corporate veil include whether corporate finances are not kept separate from individual finances, or individual obligations are paid by the corporation). Travelers has not attempted to refute any of Niver's evidence concerning the financial and managerial interrelationships between and among Travelers, its parent company, and other subsidiaries of that parent company.

In light of all of the evidence, the court finds that Niver has made at least a *prima facie* showing that the corporate veil should be pierced in this case, as well as a *prima facie* showing that the requirements have been met for an award of punitive damages under IOWA CODE § 668A.1(a). That *prima facie* showing opens the door, first, to discovery of not only the financial condition of Travelers, but also the financial condition of Travelers's parent company. It also permits Niver to present to the jury evidence concerning whether or not the corporate veil should be pierced as well as evidence of the financial condition of both Travelers and Travelers's parent company for purposes of determining punitive damages. Of course, because whether or not the corporate veil should be pierced is a jury question, *see Team Central, Inc.*, 271 N.W.2d at 923, the jurors must be instructed on the factors relevant to that determination and also instructed that they can only consider the

financial condition of Travelers's parent company, for purposes of determining punitive damages, if they first find that the corporate veil should be pierced.

### D. *Travelers's Motion To Bifurcate Trial*

The last matter before the court at this time is Travelers's May 2, 2006, Motion To Bifurcate Compensatory And Punitive Damages Issues For Trial (docket no. 203).◘[7] In support of its motion, Travelers asserts that, primarily for the reasons set forth in its response to Niver's Motion For Advanced Evidentiary Ruling, Travelers will suffer "extreme" or "tremendous" prejudice if the jury is permitted to hear and consider evidence going only to the issue of punitive damages as the jury considers Niver's claim for compensatory damages. Although Niver has not yet responded to this motion, the court finds that it is nevertheless ripe for disposition, because Travelers relies primarily on arguments that Niver has already addressed on his own motion.

Travelers is correct that Rule 42(b) of the Federal Rules of Civil Procedure provides for bifurcation of trials, as follows:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims,

---

[7]In that motion, Travelers again asserts that its previously-filed motion in limine has not yet been ruled upon. Again, Travelers is mistaken, because the court's order dated February 15, 2006, denied all motions in limine then pending without prejudice to renewal pursuant to the schedule for pretrial motions set forth in the order setting the "back up" trial date. The court denied all then pending motions in limine owing to the likelihood that the court's summary judgment ruling would moot certain evidentiary questions and alter or raise other evidentiary questions. Because Travelers has not renewed any prior motion in limine, there are no other evidentiary motions now before the court.

cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. R. CIV. P. 42(b). The Eighth Circuit Court of Appeals has repeatedly held that the trial court's ruling on a motion to bifurcate "is reviewed for abuse of discretion." *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (citing *Equal Employment Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).

Courts in this Circuit have recognized that many factors may be relevant to the determination of whether or not to bifurcate proceedings pursuant to Rule 42(b). *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201-02 (8th Cir. 1990) ("In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion."); *accord Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, ___ F.3d ___, ___, 2006 WL 1026992, *2 (E.D. Mo. 2006) ("Multiple factors govern whether bifurcation is appropriate in any given case, including the separability of the issues; simplification of discovery and conservation of resources; prejudice to the parties; and the effect of bifurcation on the potential for settlement.") (citing *F & G Scrolling Mouse, LLC v. IBM Corporation*, 190 F.R.D. 385, 387 (M.D.N.C. 1999)); *Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 466 (N.D. Iowa 2003) (citing *O'Dell*, 904 F.2d at 1201-02, as identifying pertinent factors, and noting, further, that Rule 42(b) expressly identifies "expedition" and "economy" as pertinent factors). However, the key issue is whether bifurcation is necessary to avoid prejudice. *Athey*, 234 F.3d at 362 (because the movant could not show prejudice, the district court did not abuse its discretion by refusing to bifurcate claims).

The Eighth Circuit Court of Appeals has held that "[t]he decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court." *Thorne v. Weld Inv., Inc.*, 197 F.3d 1206, 1213-14 (8th Cir. 1999). That court has also recognized that bifurcation of trial into separate phases to consider, first, liability and compensatory damages, and second, punitive damages, can avoid the potential that evidence pertinent to punitive damages will improperly prejudice a determination on liability and compensatory damages. *See Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997) (bifurcation of the trial in this way eliminated the risk that the liability and compensatory damages determinations were affected by counsel's improper remark made in the punitive damages phase). On the other hand, where evidence on one issue is relevant to other issues that the movant seeks to bifurcate into a separate phase of the trial, the movant is not prejudiced, and the court does not abuse its discretion in declining to bifurcate the issues. *See Equal Employment Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998) ("The evidence of racially discriminatory conduct was relevant on issues of liability, racial animus of managers, and punitive damages. Adam's Mark was therefore not prejudiced by admission of such evidence in a single proceeding, and the district court did not abuse its discretion in declining to bifurcate the issues.") (citations omitted).

Here, the court is not persuaded by Travelers's assertions that it will suffer "extreme" and "tremendous" prejudice if compensatory damages and punitive damages issues are tried in a single proceeding. Indeed, the court cannot find that Travelers has clearly articulated what that prejudice would be. Moreover, Travelers's apparent concerns that Niver might be allowed to present evidence of "how bad" Travelers's conduct was, but that Travelers would not be allowed to present evidence showing the reasons for its conduct in mitigation, has been removed by the court's conclusion, above, that Travelers

*is* entitled to present evidence of the reasons for its conduct. Ultimately, however, the court finds that, at least in a case involving a claim of bad faith failure to pay insurance benefits, compensatory damages including (and perhaps limited to) emotional distress damages, and punitive damages, the issues are so interrelated, in that the nature of and reasons for the defendant's conduct are relevant to all of the issues, that Travelers will not be prejudiced by admission of all of the evidence in a single proceeding for determination of compensatory and punitive damages. *Id.* (where evidence is relevant to all pertinent issues, the party against whom that evidence is offered is not prejudiced, and the court does not abuse its discretion by declining to bifurcate proceedings); *Athey*, 234 F.3d at 362 (the key issue for determining whether or not to bifurcate proceedings is whether a party will be prejudiced absent bifurcation). Therefore, Travelers's motion to bifurcate will be denied.

## III. CONCLUSION

Upon the foregoing,

1.      Plaintiff Niver's March 14, 2006, Motion For Advanced Ruling On Limited Evidentiary Issues Prior To Final Pretrial Conference (docket no. 196) is granted in part and denied in part, as follows:

      a.      To the extent that Niver seeks to exclude evidence of Travelers's reasons for its conduct *after July 2001*, his motion is denied. Evidence concerning what Travelers knew about Niver's claim as of July 2001, the point at which the court determined that Travelers was acting in "bad faith," and thereafter, and what Travelers did and why during and after July 2001 *is admissible* at trial on damages issues, subject to appropriate jury instructions and other evidentiary challenges. Evidence concerning either party's conduct or the reasons for its conduct prior to

July 2001 will be admissible *only* for the purpose of establishing what Travelers knew about Niver's claim as of July 2001. The court suggests that the parties attempt to draft a stipulation concerning what Travelers knew about Niver's claim and the parties' positions concerning that claim as of July 2001, in order to expedite presentation to the jury of the trial on damages issues only.

b.       Niver's request for a pretrial determination that excerpts of videotaped depositions are admissible in his case-in-chief is denied without prejudice, because the court cannot, at this time, determine the admissibility of such excerpts of videotaped depositions in Niver's case-in-chief. Nevertheless, Niver remains free to use the excerpts of the videotaped depositions for purposes of impeachment, subject to other objections.

c.       Niver's request for leave to conduct discovery concerning the financial condition of Travelers and its parent corporation and to present such evidence to the jury for purposes of the jury's determination of whether Niver is entitled to punitive damages and, if so, in what amount is granted.

2.       Travelers's May 2, 2006, Motion To Bifurcate Compensatory And Punitive Damages Issues For Trial (docket no. 203) is denied.

IT IS SO ORDERED.

DATED this 3rd day of May, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA