IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

SCOTT NIVER,

Plaintiff,

vs.

TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

Defendant.

No. C 01-3064-MWB

MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' MOTIONS IN LIMINE

_____

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A. Travelers's Amended And Substituted Motion In Limine . . . . . . . . . . 11
        1. Records of other lawsuits against Travelers . . . . . . . . . . . . 11
            a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . 11
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
                i. The proper context for admissibility . . . . . . . 13
                ii. Admissibility of the evidence . . . . . . . . . . . . . 15
        2. Incentive plans and programs . . . . . . . . . . . . . . . . . . . . . 18
            a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . 18
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        3. The "Dr. Long report" . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        4. Evidence of damages other than emotional distress . . . . . . . 23
            a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . 24
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    B. Niver's Motion In Limine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        1. Travelers's untimely response . . . . . . . . . . . . . . . . . . . . . 31
        2. Travelers's conduct in dealing with Niver's prior workers
           compensation claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

|  |  | a. | Arguments of the parties | 33 |
|  |  | b. | Analysis | 34 |
|  | 3. | Evidence of Niver's sexual activities | | 35 |
|  |  | a. | Arguments of the parties | 35 |
|  |  | b. | Analysis | 36 |
|  | 4. | References to penalty benefits | | 38 |
|  |  | a. | Arguments of the parties | 38 |
|  |  | b. | Analysis | 39 |
|  | 5. | Niver's disciplinary record | | 40 |
|  | 6. | Niver's receipt of government benefits | | 41 |
|  | 7. | Settlement negotiations | | 42 |
|  |  | a. | Arguments of the parties | 42 |
|  |  | b. | Analysis | 43 |
|  | 8. | Evidence of someone else's "fault" | | 44 |
|  | 9. | "Windfall" arguments | | 44 |
|  | 10. | "Good" or "charitable" acts by Travelers | | 44 |
|  | 11. | The meaning of "clear, convincing, and satisfactory evidence" | | 45 |
|  | 12. | Advice of counsel | | 47 |
|  | 13. | Evidence acquired after October 11, 2002 | | 48 |
|  |  | a. | Arguments of the parties | 48 |
|  |  | b. | Analysis | 49 |
|  | 14. | "Golden Rule" arguments | | 50 |
|  | 15. | "Money Tree" arguments | | 51 |
|  | 16. | References to Niver's motion in limine | | 52 |

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

In this action for first-party bad faith for failure to pay workers compensation benefits, the court entered summary judgment in the plaintiff's favor on liability issues, leaving only damages issues for trial to a jury. After the court's summary

judgment ruling, the court denied all pending motions in limine without prejudice to amendment in light of the narrowing of the issues for trial. The court thereafter resolved one set of pretrial evidentiary questions presented by a trial on damages issues only, but the parties have now filed renewed and amended motions in limine, purportedly tailored to the damages issues now set for trial. In the interest of an efficient and fair trial on damages issues, the court will attempt to resolve the issues presented in the parties' renewed and amended motions in limine, to the extent that the court is able to do so pretrial.

## I. INTRODUCTION

### A. Factual Background

As in its previous ruling on pretrial evidentiary questions, *see Niver v. Travelers Indem. Co. of IL*, ___ F. Supp. 2d ___, 2006 WL 1165865 (N.D. Iowa May 3, 2006) (order, docket no. 206) (memorandum opinion and order regarding the plaintiff's motion for advance evidentiary ruling and defendant's motion to bifurcate trial), the court will not attempt here a detailed dissertation of all of the facts, disputed and undisputed, in this case. Rather, most of the factual background of importance here is set forth in the court's ruling on the parties' motions for summary judgment. *See Niver v. Travelers Indem. Co. of Illinois*, 412 F. Supp. 2d 966, 968-72 (N.D. Iowa 2006). Nevertheless, the court will set forth sufficient facts to provide some context for the present ruling.

For present purposes, suffice it to say that plaintiff Scott Niver was formerly employed by Curries Manufacturing (Curries) in Mason City, Iowa. Defendant Travelers Indemnity Company of Illinois (Travelers) was and is the workers compensation insurance carrier for Curries. However, Curries itself had authority to decide whether to pay workers compensation claims up to a certain dollar amount, because of its "retention,"

*i.e.*, deductible.  At the time giving rise to Niver's claim of bad faith failure to pay workers compensation benefits, Niver had already made and received benefits pursuant to workers compensation claims for, among other things, a hernia in 1995 and a knee injury in 1999.  The central issue in the present dispute, however, was the compensability of a workers compensation claim for groin problems that Niver reported to Curries on October 12, 2000, just shortly after his return to work after his knee problems.  The parties agree that Niver did not report a new injury on October 12, 2000; rather, he asserted that the groin problem was related to one or more of his prior workers compensation claims.  Nevertheless, the report of his complaint about groin pain that Curries made to Travelers indicated a "date of injury" of October 12, 2000.  Niver also demanded benefits, including weekly benefits, medical benefits, and, eventually, penalty benefits, that would only have been available for a new injury claim.

Travelers denied Niver's claim for groin pain for the first time by letter dated October 26, 2000.  The parties then engaged in an extended dispute over the compensability of the claim.  Eventually, on June 28, 2001, Niver filed three petitions for workers compensation benefits with the Iowa Workers Compensation Commission, one asserting that Travelers should have paid workers compensation benefits for the groin problem in October 2000 under the 1995 "hernia" claim, one asserting that Travelers should have paid benefits for the groin problem under the 1999 "knee" claim, and one asserting that Travelers should have paid benefits for the groin problem under a claim for a "new injury" on October 12, 2000.  On July 2, 2001, Niver also filed a petition in Iowa District Court for Cerro Gordo County alleging Travelers's bad faith failure to pay his workers compensation claim for the October 2000 groin problem.  Travelers subsequently removed that action to this court.

This action was stayed, however, pending resolution of claims in front of the Iowa Workers Compensation Commission. Although Travelers's adjustors eventually recognized that all of the record evidence was relating the October 2000 groin problem to the 1995 "hernia" claim, and that medical benefits for that problem should have been paid pursuant to the "lifetime benefits" available on the 1995 "hernia" claim, Travelers continued to dispute the claim, in large part because Niver had filed three separate workers compensation petitions and his bad faith action. By decision dated November 20, 2002, the Iowa Workers Compensation Commission ordered Travelers to pay past and future medical benefits, mileage, and costs for the October 2000 groin problem pursuant to the 1995 "hernia" claim. Although Travelers pursued an administrative appeal, Travelers also lost that appeal, and ultimately paid the administrative award on November 26, 2003. Notwithstanding resolution of the workers compensation claims before the Commission, Niver's lawsuit asserting Travelers's bad faith failure to pay workers compensation benefits continued in this court.

## B. Procedural Background

Much of the extensive procedural background in this case is also detailed in the court's summary judgment ruling. *See Niver*, 412 F. Supp. 2d at 972-73. However, the pertinent part of that background for present purposes relates to the claims asserted in Niver's bad faith action and this court's ruling on the final round of summary judgment motions addressing Niver's bad faith claims.

In its form at the time of the final round of dispositive motions, Niver's Complaint alleged, in Count I, a claim of first-party bad faith for failure to pay workers compensation benefits for the groin pain that Niver reported in October 2000 pursuant to the 1995 "hernia" claim; in Count II, a claim for exemplary damages for the intentional, reckless

or willful and wanton disregard of Niver's rights under the Workers' Compensation Act; and in Count III, a claim of first-party bad faith for pursuing an administrative appeal of the November 20, 2002, arbitration decision awarding Niver benefits for medical bills and expenses for the October 2000 groin problem pursuant to the 1995 "hernia" claim. *See* Fourth Amended Petition At Law (docket no. 79). Travelers denied these claims and asserted various affirmative defenses. *See* Answer (docket no. 80).

Travelers filed its Second Amended And Substituted Motion For Summary Judgment on November 23, 2005 (docket no. 163), which asserted that Travelers was entitled to summary judgment in its favor on all counts in Niver's action for bad faith. On December 15, 2005, Niver resisted Travelers's motion (docket no. 164), and also filed his own Motion For Summary Judgment (docket no. 165), which if granted, instead of Travelers's motion, would have left only damages issues for trial. Travelers filed a resistance to Niver's motion for summary judgment on January 6, 2006 (docket no. 168).

In a Memorandum Opinion filed February 6, 2006 (docket no. 176), *see Niver v. Travelers Indem. Co. of Illinois*, 412 F. Supp. 2d 966, 968-72 (N.D. Iowa 2006), the court denied Travelers's November 23, 2005, Second Amended And Substituted Motion For Summary Judgment. However, the court granted Niver's December 15, 2005, Motion For Summary Judgment (docket no. 165) on liability issues, leaving only damages issues for trial. Somewhat more specifically, on the "objective" element of Niver's bad faith claim—that is, that the insurer had no reasonable basis for denying the plaintiff's claim—the court found unpersuasive as a matter of law Travelers's contention that Niver's claim for workers compensation benefits was "fairly debatable" simply because Niver initially asserted that he was entitled to benefits under one or more of three different workers compensation claims. Instead, the court held that the pertinent question was whether there was *a point at which* Travelers no longer had a reasonable basis to deny

6

Niver's claim for benefits pursuant to *any* of Niver's workers compensation claims. The court also found that the notes from Niver's groin surgery in December 2000, which were provided to Travelers in March 2001, demonstrated that the most likely cause of the groin pain was the apparent neuroma and scar tissue resulting from the 1995 hernia surgery, that the post-surgery pathology report confirmed the neuroma, and that subsequent medical records, all of which were also provided to Travelers, focused on the 1995 hernia surgery as the cause or primary cause of the October 2000 groin pain. The court also found that, as a matter of law, these surgery and post-surgery records and other medical records available to Travelers by July 2001 rendered the compensability issue "undebatable," because Travelers could no longer "dispute on any logical basis" that *a* proximate cause of Niver's October 2000 groin pain was the neuroma and scar tissue from the 1995 hernia surgery, even if the medical records recognized other possible causes as well. Thus, as a matter of law, there was no reasonable basis for Travelers's denial of that claim. *Id.* at 988-92. As to the "subjective" element—that the insurer knew or had reason to know that its denial was without reasonable basis—the court held that, as a matter of law, adjustors for Travelers knew by July 2001 that Niver's claim for groin pain in October 2000 should have been paid under the 1995 "hernia" claim, *i.e.*, that Travelers's continued denial of the claim after July 2001 was without reasonable basis. *Id.* at 992. In short, the court held that, as a matter of law, Travelers's continued denial of Niver's claim during and after July 2001 had been in bad faith.

The court found that these determinations left for trial the question of damages on Niver's bad faith claim in Count I of his Complaint, which alleges Travelers's bad faith failure to pay workers compensation benefits for the October 2000 groin pain pursuant to the 1995 "hernia" claim. The court also held Count III, which alleges Travelers's bad faith appeal of the administrative decision, involved an allegation of *subsequent* bad faith,

such that it was mooted or subsumed by summary judgment in Niver's favor on his bad faith claim in Count I. Therefore, because the court granted Niver's motion for summary judgment on Count I of his Complaint, and denied Travelers's motion for summary judgment, the court directed that this matter proceed to jury trial only on the issue of Niver's damages, including his claim for exemplary damages in Count II, from Travelers's bad faith failure to pay his claim for medical benefits for his October 2000 groin pain pursuant to the 1995 "hernia" claim. *Id.* at 992-93.

By order dated February 15, 2006 (docket no. 189), the court certified its summary judgment ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), cancelled the March 6, 2006, trial date for the remaining claims, and stayed all proceedings in this case pending disposition of any interlocutory appeal. In addition, the February 15, 2006, order denied all pending motions in limine without prejudice to reassertion pursuant to the terms of a subsequent order setting a "back up" trial date. Pursuant to the order staying the case, the court entered an order on February 24, 2006 (docket no. 193), setting a "back up" trial date for June 5, 2006.

Notwithstanding the stay, by order dated February 17, 2006 (docket no. 191), the court did permit Niver to file a Fifth Amended Complaint. In that Fifth Amended Complaint, Niver amended his Complaint only to change the name of the defendant to "Travelers Indemnity Company of Illinois n/k/a Travelers Property Casualty Company of America" to reflect a change made by the defendant in January 2004. The amendment did not change the claims asserted in the previous version of the Complaint. Indeed, it did not even reflect the court's conclusion in its summary judgment ruling that Count III, which alleged bad faith in Travelers's appeal of the administrative decision of the Iowa Workers Compensation Commission, was subsumed and mooted by the court's grant of summary

judgment in Niver's favor on liability on his bad faith claim in Count I.  *See Niver*, 412 F. Supp. 2d at 992-93.

Travelers did seek leave of the Eighth Circuit Court of Appeals to pursue an interlocutory appeal of the court's summary judgment ruling.  However, on March 9, 2006, the court received a copy of the March 2, 2006, order of the Eighth Circuit Court of Appeals denying Travelers's petition for writ to file interlocutory appeal.  *See* docket no. 195.  Thus, the way was cleared for trial on damages on the "back up" trial date of June 5, 2006.

On March 14, 2006, shortly after the Eighth Circuit Court of Appeals denied Travelers's petition for leave to pursue an interlocutory appeal, Niver filed his Motion For Advanced Ruling On Limited Evidentiary Issues Prior To Final Pretrial Conference (docket no. 196).  On May 2, 2006, Travelers filed a Motion To Bifurcate Compensatory And Punitive Damages Issues For Trial (docket no. 203).  The court ruled on those motions on May 3, 2006.  *See Niver v. Travelers Indem. Co. of IL*, ___ F. Supp. 2d ___, 2006 WL 1165865 (N.D. Iowa May 3, 2006) (order, docket no. 206).  However, that ruling did not resolve all of the pretrial evidentiary disputes between the parties, because the parties have now renewed and amended their motions in limine filed before the March 2006 trial date, which the court had denied without prejudice to refiling in light of the narrowing of the issues for trial to damages issues.  *See* Expedited Order Certifying February 6, 2006, Summary Judgment Ruling For Interlocutory Appeal, February 15, 2006 (docket no. 189) (among other things, denying all pending motions in limine without prejudice to reassertion pursuant to the terms of the order setting a "back up" trial date).

Thus, the motions in limine now pending before the court are Travelers's May 10, 2006, Amended And Substituted Motion In Limine (docket no. 210), and Niver's May 10, 2006, Motion In Limine (docket no. 211).  Niver resisted Travelers's motion on May 17,

2006 (docket no. 220), but Travelers did not resist Niver's motion until May 25, 2006 (docket no. 234). On May 25, 2006, Niver filed a motion (docket no. 235) to strike Travelers's resistance to his motion in limine on the ground that Travelers's resistance was untimely.

The court has found it unnecessary to set oral arguments on the motions now before the court. Therefore, the court will consider those motions on the basis of the parties' written submissions.

## II. LEGAL ANALYSIS

Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of some or all of the evidentiary questions presented in the parties' renewed and amended motions in limine will likely serve the ends of a fair and expeditious presentation of the damages issues to the jury. Therefore, the court turns to consideration of those motions, beginning with Travelers's motion.

### A. Travelers's Amended And Substituted Motion In Limine

In its Amended And Substituted Motion In Limine, Travelers seeks an order excluding from trial the following categories of evidence: (1) evidence of any records or other information generated during the course of any other first-party bad faith or other case filed or tried against a St. Paul Travelers company; (2) evidence regarding or in any way referring to the programs, methods, plans, or manner in which Travelers compensates its employees, including its adjustors and managers; (3) evidence regarding what has come to be known as the "Dr. Long report"; and (4) evidence regarding or any claim for compensatory damages for anything other than emotional distress directly and proximately caused by Travelers's denial of Niver's workers compensation claim. The court will consider the admissibility of each category of evidence in turn.

### 1. Records of other lawsuits against Travelers

The first category of evidence that Travelers seeks to exclude is evidence that Travelers describes as any records or other information generated during the course of any other first-party bad faith or other case filed or tried against a St. Paul Travelers company as well as evidence of judgments or verdicts entered against any such company in any such other case(s), whether offered in support of Niver's "institutional bad faith" theory of liability or otherwise. It is clear that the centerpiece, but not necessarily the entirety, of the evidence that Travelers seeks to exclude concerns a South Dakota case captioned *Torres v. Travelers Insurance Company*. Niver contends that all of the evidence in question is admissible.

### a. Arguments of the parties

Travelers contends that Niver has obtained documents from some source connected with the *Torres* litigation and has used those documents, for example, in support of his motion to compel discovery in support of a claim of "institutional bad faith," which is a

11

claim to the effect that Travelers, as an institution, has policies, programs, and/or procedures in place that have as their goal wrongfully denying workers compensation claims across the board. However, Travelers argues that the fact that a jury returned a verdict against a Travelers affiliate or company in one case is no more relevant to or dispositive of any issues in this case than the fact that Travelers has successfully defended against many other bad faith claims. Thus, Travelers contends that it is unfair and prejudicial to Travelers to allow Niver to use in this case documents derived from other sources in an attempt to persuade a jury in this case that Travelers intentionally and wrongfully denied Niver's claim for workers compensation benefits. Travelers also contends that such evidence falls outside the scope of admissible evidence of "reprehensibility" of a defendant's conduct, for punitive damages purposes, even if "recidivism" is relevant to "reprehensibility," because there is no evidence that Travelers harms individuals intentionally as an institution. Travelers contends that Niver's arguments to the contrary are based on mere speculation. Thus, Travelers contends that this evidence should be excluded pursuant to Rules 401 and 402 of the Federal Rules of Evidence as irrelevant, pursuant to Rule 403 as prejudicial to an extent that outweighs any probative value, and pursuant to Rule 404 as inadmissible "bad acts" evidence. Travelers contends that this case should be decided on the basis of whether Niver has proved, by substantial evidence, that Travelers denied his claim for workers compensation benefits knowing full well that the claim was not fairly debatable as submitted and knowing full well that the denial was intentionally wrongful and would harm Niver. Thus, Travelers contends that only documents generated in this case are relevant to Niver's claim.

Niver, however, contends that the evidence in question is relevant to the "reprehensibility" of Travelers's conduct for purposes of the jury's determination of whether to award punitive damages, and if so, in what amount. Niver asserts that

"reprehensibility" of the defendant's conduct is the most important indicium of the reasonableness of a punitive damages award under United States Supreme Court precedent. Niver contends, further, that, contrary to Travelers's contentions, he can show that the behavior of Travelers in the *Torres* case was replicated in the present case, so that evidence from the *Torres* case is relevant and admissible on punitive damages issues as evidence of "recidivism" and "reprehensibility." Specifically, he explains that Travelers raised in the *Torres* case three of the same reasons it later used for asserting that Niver's claim was "fairly debatable." Niver also contends that the same Claims Professional Incentive Program produced in discovery in this case, which ties Travelers's employees' bonuses to overall claim payouts, was also in evidence in *Torres*. Thus, Niver contends that this evidence from the *Torres* case should be admissible so that the jury can understand that his case is not a one-time or isolated instance, but an example of "recidivist" conduct showing the "reprehensibility" of Travelers's acts. Niver contends, further, that the court can instruct the jury that it must not award punitive damages in this case to punish Travelers for its conduct in *Torres* or any other case, but can award punitive damages in this case to punish Travelers for replicating previous wrongful conduct. Niver also contends that Travelers is ignoring the extent to which the relevance of this evidence outweighs any potential for prejudice, as well as ignoring the admissibility of prior "bad acts" for proper purposes, which Niver contends include showing the "reprehensibility" of the defendant's conduct for purposes of determining the proper amount of punitive damages.

> b. *Analysis*

> i. *The proper context for admissibility.* Travelers's arguments on this category of evidence reflect, in part, precisely the confusion that the court had hoped to avoid by denying all pending motions in limine without prejudice to renewal in light of the court's

ruling granting summary judgment in Niver's favor on liability issues. That confusion arises from the fact that many of Travelers's arguments are still framed in terms of the admissibility or inadmissibility of the evidence on *liability* issues, which have been decided by the court, instead of in terms of the admissibility or inadmissibility of the evidence on the *damages* issues, which are all that remain for the jury to decide. For example, Travelers misses the point when it argues that this case should be decided on the basis of whether Niver has proved, by substantial evidence, that Travelers denied his claim for workers compensation benefits knowing full well that the claim was not fairly debatable as submitted and knowing full well that the denial was intentionally wrongful and would harm Niver, because such an argument is no longer apposite. While it is true that, to establish the insurer's *liability* for bad faith, the plaintiff was required to prove (1) that the insurer had no reasonable basis for denying the plaintiff's claim, and (2) that the insurer knew or had reason to know that its denial or refusal was without reasonable basis, *see, e.g., Bellville v. Farm Bureau Mutual Insurance Company*, 702 N.W.2d 468, 473 (Iowa 2005) (elements for liability for bad faith); *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 397 (Iowa 2001) (same), this court has concluded, as a matter of law, that Niver has made these showings. *See Niver*, 412 F. Supp. 2d at 988-92.

What Niver must prove to recover actual damages, which are still at issue, is that Travelers's bad faith was a proximate cause of damage to Niver and the nature and extent of that damage. *Gibson*, 621 N.W.2d at 397 (elements for damages for bad faith). Furthermore, what he must prove to recover punitive damages, which are also still at issue, is that Travelers's bad faith conduct constituted willful and wanton disregard for the rights or safety of another. *Id.* at 395 (citing Iowa Code § 668A.1(a) for the standards for punitive damages). It is within the context of these requirements for proof of the remaining damages issues that the court must evaluate the admissibility of the evidence

each party seeks to exclude at trial. Because Travelers has not tailored its arguments for exclusion of the evidence about or from other bad faith cases against Travelers to the proper context of the issues that actually remain for trial in this case, the court must now try to pick out from Travelers's many arguments those that remain relevant.

*ii.    Admissibility of the evidence.* Turning to the admissibility, in this trial only on damages issues, of evidence about or from other bad faith cases against Travelers, the court has considerable doubt that such evidence has any tendency whatsoever to prove that Travelers's bad faith proximately caused damage to Niver or the extent of that damage, for purposes of proving actual damages. *See* FED. R. EVID. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Thus, were the only issues remaining for trial "actual damages" issues, the evidence about or from other bad faith cases would likely be excludable as either irrelevant, *see* FED. R. Evid. 402 (irrelevant evidence should be excluded), or of such marginal relevance that its potential for prejudice or confusion of the issues would exceed its probative value. FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for, *inter alia*, confusion of the issues or prejudice).

However, the issues of whether and what amount of punitive damages to award also remain for trial, and the court finds that the admissibility of this evidence as to those punitive damages issues is a different matter. Both parties cite *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), for the proposition that "[t]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 420 (2003) (quoting *BMW of North Am., Inc. v. Gore*, 517 U.S.

559, 575 (1996)).  Both parties also acknowledge that, in *Campbell*, the United States Supreme Court noted that its "'holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.'"  *Id.* at 423 (again quoting *Gore*, 517 U.S. at 577).  However, in *Campbell*, the Court also warned that a court cannot award punitive damages "to punish and deter conduct that bore no relation to the [current plaintiff's] harm," and that "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised [in the case before the court], may not serve as the basis for punitive damages." *Id.* at 422.  More specifically,

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis. . . .  Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains. *Gore, supra*, at 593, 116 S. Ct. 1589 (BREYER, J., concurring) ("Larger damages might also 'double count' by including in the punitive damages award some of the compensatory, or punitive, damages that subsequent plaintiffs would also recover").

*Campbell*, 538 U.S. at 423.  Consequently, "in the context of civil actions courts must ensure the conduct in question replicates the prior transgressions." *Id.*  To that end, the Court considered whether the evidence of misconduct in another case or other cases is "of the sort that injured [the plaintiff]." *Id.*  The Court explained that, "[a]lthough evidence of other acts need not be identical to have relevance to the calculation of punitive

damages," it is error to introduce "evidence that ha[s] nothing to do with" the dispute presently before the court. *Id.* at 423-24.

Here, Travelers asserts that, as in *Campbell*, there is scant or no evidence that Travelers's bad faith conduct toward Niver "replicates prior transgressions," while Niver contends that the "replication" of misconduct between the *Torres* case and the present case is apparent from evidence that he has gathered. More specifically, Niver contends that he has evidence that Travelers raised in the *Torres* case three of the same reasons it later used for asserting that Niver's claim was "fairly debatable," and that the same Claims Professional Incentive Program produced in discovery in this case, which ties Travelers's employees' bonuses to overall claim payouts, was also in evidence in *Torres*. The apparent "replication" of conduct between the *Torres* case and the conduct on which this court concluded that Travelers had acted in bad faith in this case appears to be close enough—at least as the evidence is characterized by Niver—for the evidence from the prior case to have some tendency to make the existence of "recidivism" in this case more probable. *See* FED. R. EVID. 401 (defining relevant evidence). Again, the prior misconduct need not be "identical" to be relevant to the calculation of punitive damages in this case, and it cannot reasonably be said that if the evidence is as Niver characterizes it that it has "nothing to do with" Niver's claims. *Campbell*, 539 U.S. at 423-24. Hence, that evidence is sufficiently *likely* to be admissible at trial that Travelers is not entitled to a blanket exclusion. *See* FED. R. EVID. 402 (relevant evidence is generally admissible). Therefore, Travelers's motion to exclude this first category of evidence will be denied.

While this court must "ensure that the conduct in question replicates the prior transgressions," *Campbell*, 538 U.S. at 423, for the evidence to be admissible, and must exclude evidence that has "nothing to do with" the dispute presently before the court, *id.* at 423-24, this court believes that it is ultimately for a jury to decide whether the evidence

of prior misconduct is sufficiently like the misconduct at issue here to warrant punishing Travelers for "recidivism" in an award of punitive damages. Thus, consistent with *Campbell*, jurors must be instructed that they cannot award punitive damages to punish or deter conduct that bore no relation to Niver's harm, and that they may not consider the merits of other parties' claims, real or hypothetical, against Travelers in determining whether or not to award punitive damages against Travelers in this case, but may only award punitive damages to punish Travelers for repeated "bad faith" conduct if this case repeats prior "bad faith" conduct of the same sort that injured Niver. *See id.* at 422-24.

> 2. *Incentive plans and programs*

Next, Travelers seeks to exclude any reference to, testimony about, or documents regarding Travelers's compensation and/or bonus programs, including, but not limited to, critical success factors program documents, claim incentive plan documents, workers compensation scorecard documents, documents from the personnel files of employees of Travelers, and/or other such similar documents. Niver also resists exclusion of such evidence.

> a. *Arguments of the parties*

Travelers contends that the evidence in this category should be excluded, because there is no evidence in this case that any compensation, bonuses, or incentives were given to any of the employees involved in Niver's case on the basis of reducing the payout on his or any other claims. Travelers asserts that the circumstances in this case bear no similarity to the conduct in cases involving other insurers on which Niver has relied to seek discovery of this information. Indeed, Travelers contends that the adjustors who worked on Niver's case testified in deposition either that they had never heard of the programs, plans, or incentives identified by Niver's counsel, or did not know what the programs, plans, or incentives were if they had heard of them, and that their decisions in Niver's case

18

and other cases were not affected by any such programs, plans, or incentives. Travelers also contends that production of personnel files of its employees would violate such employees' privacy with no compelling justification. In short, Travelers contends that this category of evidence should be excluded pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.

Niver, however, asserts that he has no intention of using exhibits from *Torres* or other cases concerning compensation, bonuses, or incentives to employees of Travelers or other insurers to deny or minimize the payout on claims, because such evidence exists *in this case*. He contends that he has and intends to present documents that reveal that Travelers has in place a program that provides bonuses or "incentives" to its employees that are tied directly to the payout on claims they handle. These programs, Niver asserts, are called the Claim Property Casualty Incentive Program (CIP) and the Claim Professional Incentive Plan (CP). More specifically, he contends that he will offer exhibits that show the amount of bonuses that the employees who were involved in Niver's workers compensation claim received during the years that they were handling Niver's claim, as well as performance reviews that tie their compensation and performance to the "average paid" on claims, as well as documents that explain the "Critical Success Factor" program used in employee reviews. Niver contends that these documents will be offered to show the goals set for "average paid value" on a claim and the comparison of the actual results against those goals. Niver contends that these documents are clearly relevant to punitive damages, because they tend to make more probable that Travelers acted willfully and wantonly and that its conduct was reprehensible by showing how and why Travelers acted with reckless disregard of Niver's rights. Niver argues that denials by Travelers's employees that any plans, programs, or incentives influenced their treatment of his claim raise only credibility issues for a jury to decide. Far from a wide-ranging violation of

employee privacy, Niver contends that he seeks to admit into evidence only documents that set forth two employees' performance reviews, compensation, and incentives (Linda Nutting's and Tim Lefler's), and that there is nothing embarrassing about these documents, because they do not reveal any personal information.

### b. Analysis

While the analysis of this issue might be different if Niver intended to offer evidence of incentive plans and programs of other insurers or even of Travelers's personnel and offices not involved in the handling of his claim, Niver represents that the evidence of incentive plans and programs that he intends to present will be limited to evidence developed in this case concerning adjustors and Travelers's offices directly involved in the handling of Niver's claims. As so limited, the court concludes that such evidence does not implicate the general prohibition on "other bad acts" evidence in Rule 404(b) of the Federal Rules of Evidence, because such evidence relates to the "bad acts" actually at issue in this case. *See* FED. R. EVID. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Rather, the issues relating to the evidence in this category that Niver actually intends to present appear to the court to be limited to the admissibility of the evidence under Rules 401, 402, and 403.

As to relevance and admissibility under Rules 401 and 402, the court agrees with Niver that evidence suggesting *why* Travelers's adjustors may have handled Niver's claim in a certain way, particularly where that evidence suggests that the adjustors may have received compensation or incentives for minimizing payouts on claims, is relevant, at a minimum, to the issue of whether Travelers acted in willful and wanton disregard of Niver's right to fair compensation for his work-related groin injury. *See Gibson*, 621 N.W.2d at 395 (the issue for punitive damages is whether the defendant's conduct

constituted willful and wanton disregard for the rights or safety of another, citing IOWA CODE § 668A.1(a)). While the court is, perhaps, not convinced itself that the deposition testimony cited by Niver in this portion of his resistance to Travelers's motion in limine is the "smoking gun" that any decision in Niver's case was impacted by any plan or incentive program to minimize claims payouts, the court is no more convinced that Travelers has established as a matter of law that there was no such impact, rendering any such evidence irrelevant, *see* FED. R. Evid. 402, or that Travelers has shown that the evidence in question is so marginally relevant or speculative that its potential for prejudice outweighs its probative value. *See* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for, *inter alia*, confusion of the issues or prejudice). Rather, the court finds that there are jury questions, concerning both facts and credibility, raised by the parties, such that the jury should be allowed to consider this evidence, in the limited form that Niver represents that he intends to offer it. Finally, the court cannot find privacy issues warrant excluding the limited information from personnel files of only two employees that Niver represents that he intends to present. However, to minimize any potential imposition on the privacy of those employees, the court cautions Niver that any evidence relating to a particular employee should be purged of any personal identification information other than the employee's name, and that any evidence of bonuses or incentives purportedly received by that employee for minimizing claim payouts should be in terms of percentage of total compensation, rather than in terms of actual dollar amounts.

Therefore, this portion of Travelers's motion in limine will also be denied.

### 3.    The "Dr. Long report"

The third item of evidence that Travelers seeks to exclude is evidence regarding what has come to be known as the "Dr. Long report." The issue of the discoverability of this document was litigated on more than one occasion, most recently on appeal of a magistrate judge's decision denying Niver's renewed motion to compel production of the report. *See* Order of March 11, 2005 (docket no. 149). The continuing controversy concerns a letter by Dr. Long, an in-house doctor for Travelers, which was included in Travelers's adjustor's claims notes. When the issue first arose, Niver asserted that the claims adjustor testified that the letter was at least part of the basis for the denial of Niver's workers compensation claims. However, Travelers asserted that the letter was not written until six months after Travelers first denied the workers compensation claim in question; the letter was prepared at the request of Travelers's in-house attorney for purposes of litigation of Niver's claims; and Travelers did not rely on the letter, in any way, in denying Niver's claim for workers compensation benefits, and did not rely in any way, attempt to use, or make reference to Dr. Long's letter during agency proceedings on Niver's various claims. Consequently, Travelers contended that the letter is protected by attorney-client and work-product privileges.

After separate *in camera* reviews of the letter, both the magistrate judge and the undersigned concluded that the letter should not be produced to Niver. The court found that the letter is subject to work-product protection, because it was prepared in anticipation of litigation, not merely in the ordinary course of Travelers's business. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 855 (8th Cir. 2002); *Petersen v. Douglas County Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992). The court also found that there is no sufficient basis to conclude that Travelers actually relied on the letter in initially denying or continuing to deny Niver's workers compensation claim for his groin problems arising in October 2000.

Travelers now contends that the court should exclude any reference whatsoever to Dr. Long, including, but not limited to, the solicitation and/or production of a report from and/or by Dr. Long. Niver contends that the letter from Dr. Long is a "piece of the puzzle" in the handling of his claim and that he should be allowed to make the simple inquiry as to whether Travelers has any medical opinions that support its denial of his claim and/or whether it had the medical records reviewed by any other doctor. The court concludes that Niver has presented nothing in his resistance to Travelers's motion to exclude evidence of Dr. Long's report that convinces the court that the letter or any reference to it is admissible, where the letter was subject to work-product protection, because it was prepared in anticipation of litigation, and not merely in the ordinary course of Travelers's business. *Id.*; *Petersen*, 967 F.2d at 1189. Thus, this part of Travelers's motion in limine will be granted.

On the other hand, Niver is entitled to inquire whether Travelers had any medical opinions that supported its denial of his claim and/or whether it had the medical records reviewed by any other doctor *in the ordinary course of handling his claim*, because neither that question nor the answer to it would relate to Dr. Long or his report, and the question and answer are relevant to whether Travelers acted in willful and wanton disregard of Niver's right to fair compensation for a work-related injury.[1]

### 4.    *Evidence of damages other than emotional distress*

The last category of evidence that Travelers seeks to exclude is any evidence, testimony, documents, and the like related to any item of damages other than compensatory

---

[1]Indeed, Travelers could obviate the need for even that question to be asked in front of the jury if Travelers stipulated that it did not have any medical opinions that supported its denial of Niver's claim and did not have Niver's medical records reviewed by any other doctor for purposes of handling his claim.

damages for Niver's alleged emotional distress directly and proximately caused by Travelers's denial of his claim for workers compensation benefits.[2] Niver also resists exclusion of this evidence.

### a. Arguments of the parties

Travelers contends that, in addition to damages for emotional distress, Niver has expressed an intention to claim compensatory damages for such things as lost income, bodily injury, damage to reputation, damage to credit rating, depletion of financial resources, and other such items. Travelers recognizes that, in his proposed Jury Instructions, Niver seeks compensatory damages only for emotional distress and monetary losses and expenses for, but not limited to, the following items: past and future lost wages and benefits from the date he was released to return to work by his doctors to the present; COBRA payments for health insurance coverage after he was terminated from his job; the amount of funds withdrawn from his retirement account; the income taxes and penalties that were required to be paid because of the withdrawal from his retirement account; and the interest and dividends or other earnings that would have accrued to his retirement account had the withdrawal not been made.

Travelers contends that Niver has never disputed that his medical bills were paid and that he was not denied access to health care. Travelers asserts that Niver had the right to make a claim before the Workers Compensation Commission for past and future lost wages, past and future damage to his body and mind, and past pain and suffering (*i.e.*, emotional distress), and then either to accept the award of the Commission or to seek

---

[2]The court does not read this portion of Travelers's motion to seek to exclude evidence concerning Niver's eligibility for or the amount of punitive damages. Indeed, prior rulings in the case make clear that Niver is entitled to pursue his claim for punitive damages and to present to the jury evidence in support of that claim.

further review of that award. To the extent that Niver did not seek to recover such compensation, Travelers argues, he has waived a claim for it. Travelers points out that, because Niver ultimately pursued only a claim based on the 1995 "hernia" claim, on which the statute of limitations had run, he could only recover medical benefits under the "lifetime" benefits portion of that claim, but not other kinds of benefits or compensation that he now seeks in this bad faith action. Travelers argues that, had Niver pursued his other claims, based on the 1999 "knee" claim or the 2000 "new injury" claim, on which the statute of limitations had not yet run, he could have recovered penalty and indemnity benefits to compensate him for the lost income, depletion of other financial resources, and other economic damages he now seeks from Travelers. Travelers argues that to award Niver such economic damages based on the 1995 "hernia" claim, however, would violate the legislative intent behind the statute of limitations for workers compensation claims, and as such, is highly prejudicial to Travelers and violates Travelers's right to due process of law.

Travelers contends, further, that Iowa law authorizes only emotional distress damages for a first-party bad faith claim, because tort law does not provide recovery for purely economic loss. Travelers asserts that Niver does not fall within the one case in which the Iowa Supreme Court allowed damages for economic loss for first-party bad faith, *Nassen v. National States Ins. Co.*, 494 N.W.2d 231 (Iowa 1992), because Niver was not suffering out-of-pocket losses where his own insurance was paying his medical bills while the workers compensation coverage was disputed.

Travelers also rejects Niver's contention that Curries terminated his employment as a proximate result of Travelers's denial of his workers compensation claim, so Travelers rejects Niver's argument that Travelers is also responsible for damages flowing from the loss of his employment. Travelers argues that it had no contact with Curries concerning

the status or continuation of Niver's employment and that it is undisputed that Niver took no action against Curries for terminating his employment. Travelers also argues that there is absolutely no evidence that Niver's depletion of his financial resources was proximately caused by Travelers's denial of his claim, because even if Travelers had accepted Niver's claim, Niver would have been off work from Curries, because Curries had no work within Niver's restrictions. Thus, Travelers argues, the same depletion of financial resources would have occurred whether Travelers denied Niver's claim or not. In short, Travelers asserts that Niver's economic losses were because he had no job, not because Travelers denied his workers compensation claim.

Niver, however, takes a very different view. He points out, first, that he has narrowed his claim for compensatory damages to a claim for emotional distress and specific kinds of monetary losses. Specifically, he asserts that he is only seeking emotional distress damages for the emotional distress resulting from the denial of his claim and the emotional and financial strains from the mounting medical bills and the loss of his job. He also asserts that he is only seeking monetary loss damages for loss of income and employment benefits, depletion of financial resources, including his 401K plan, and COBRA payments made after termination of his job. He asserts that these damages were proximately caused by Travelers's bad faith denial of his claim. He argues that loss of his job was a direct result of Travelers's denial of his workers compensation claim, because Curries fired him when Travelers concluded that his injury was not work-related and he had exceeded his available sick leave for non-work-related injury or illness. Thus, he contends that his financial losses resulting from his termination do result from Travelers's actions. Niver also points out that, when he was physically able to return to work and was released by his doctor to do so, he no longer had a job at Curries, and that the loss of his job was a direct result of Travelers's denial of his compensation claim.

Niver also contends that he did not waive any remedies when he dismissed two of his workers compensation petitions, because the Workers Compensation Commission determined that the groin pain problems related back to the 1995 "hernia" claim, so that the other petitions would not have provided any remedy at all. He also contends that the damages he is seeking are not damages for the physical injury he sustained, but for the bad faith denial of his workers compensation claim, so that the scope of his possible workers compensation recovery is not the measure of his damages for Travelers's bad faith.

Niver also argues that Iowa courts have recognized that the remedy for bad faith by an insurer is supposed to put the injured party in as favorable a position as he would have enjoyed, had no bad faith occurred. He contends that there is no limitation under Iowa law to recovery only for emotional distress damages for bad faith conduct. He reiterates that his monetary losses and expenses were not proximately caused by his work-related injury itself, but by Travelers's bad faith denial of his workers compensation claim, which in turn resulted in the loss of his job. Thus, he argues that he is entitled to claim past and future loss of earnings based upon the earnings he lost when he was released to return to work, but had no job to which he could return, and when he did find another job, he was unable to earn the same wages and benefits that he was earning after nine years working for Curries.

> b. *Analysis*

The court finds several fundamental flaws in Travelers's arguments concerning evidence of economic damages, which require the court to deny Travelers's motion to exclude such evidence. First, the court cannot accept Travelers's argument that Niver could have recovered some or all of the economic damages that he now seeks, if Niver had not abandoned his workers compensation petitions seeking benefits for his groin pain under the 1999 "knee" claim and the 2000 "new injury" claim. This court concluded, as a

matter of law, that Travelers acted in bad faith in failing to pay the claim for groin pain *under the 1995 "hernia" claim.* Thus, for Travelers to argue that some other claim for workers compensation benefits would have afforded Niver recovery for other losses is simply wrong; only Travelers's failure to pay benefits pursuant to the 1995 "hernia" claim was in bad faith, and the question is what damages were proximately caused by that bad faith.

To put it another way, the question is not whether Niver could have recovered some of the damages he seeks here on some other claim, or even what damages were caused by the underlying work-related injury, but what damages can be deemed to be proximately caused by Travelers's bad faith denial of Niver's claim for workers compensation benefits for his groin pain pursuant to the 1995 "hernia" claim. *Gibson*, 621 N.W.2d at 397 (the elements for damages for bad faith are proof that the insurer's bad faith was a proximate cause of damage to the plaintiff and the nature and extent of that damage). One of the reasons that the Iowa Supreme Court has recognized a claim of bad faith against an insurer is that traditional breach-of-contract damages would "not always compensate an insured for an insurer's bad faith conduct." *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988); *accord Stahl v. Preston Mut. Inc. Ass'n*, 517 N.W.2d 201, 203 (Iowa 1994). It is true that the primary example of such extra-contractual damages for first-party bad faith identified in *Dolan* was damages for ordinary emotional distress *caused by the insurer's bad faith. Id.* However, courts have also contemplated that other extra-contractual damages may be appropriate.

For example, in *Nassen v. National States Ins. Co.*, 494 N.W.2d 231 (Iowa 1992), the Iowa Supreme Court upheld a jury verdict awarding damages for "economic loss arising from the premature dissipation of the plaintiff's assets," as well as for "emotional distress," on a plaintiff's claim against her insurer for bad faith rescission of a nursing

28

home insurance policy, although the precise nature of the insurer's challenge to this award was the amount of the emotional distress damages. *Nassen*, 494 N.W.2d at 237-38. Other courts have addressed more directly the matter of the kinds of damages available for bad faith failure to pay workers compensation benefits. For example, the Texas Court of Appeals stated the principle succinctly, as follows:

> [T]he successful bad faith claimant [asserting bad faith failure to pay workers compensation benefits] does not receive a double recovery on the original claim. A bad faith recovery includes damages not for the original injury or disease and its resulting incapacity, but only for the damages resulting from the bad faith acts; not for the loss of earning capacity, but for the additional costs, economic hardship, or losses due to nonpayment of amounts owed; and not for the mental anguish of originally suffering the injury, but for being subjected to the bad faith acts. Additionally, upon proper proof, a bad faith claimant can recover punitive damages.

*Izaguirre v. Texas Employers' Ins. Ass'n*, 749 S.W.2d 550, 553 (Tex. App. 1988). Similarly, in a case apparently involving an affiliate of the present defendant, the Colorado Supreme Court concluded that the injuries complained of in an action for bad faith failure to pay workers compensation benefits, including loss of income, mental distress, and loss of attorneys fees for prosecution of the case, were injuries not covered or redressed by any portion of the state's workers compensation act, so that the act did not bar a tort action for such damages arising from the insurer's bad faith in processing a workers compensation claim. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1270-71 (Colo. 1985). Thus, a bad faith action opens the door to damages proximately caused by the bad faith, although it does not open the door to damages for the underlying injury.

Nor is the court persuaded by Travelers's assertion of the "economic loss rule" as a bar to Niver's recovery of economic damages in this case. As this court recently

explained in *Conveyor Company v. Sunsource Technology Services, Inc.*, 398 F. Supp. 2d 992 (N.D. Iowa 2005), the Iowa Supreme Court made a comprehensive review of the "economic loss doctrine" for damages in tort in *Determan v. Johnson*, 613 N.W.2d 259 (Iowa 2000). *See Conveyor Co.*, 398 F. Supp. 2d at 1006. This court noted that the Iowa Supreme Court had recounted how the rule was adopted to bar a claim for purely economic damages arising out of a defendant's alleged negligence, extended to claims based on strict liability in tort for a defective product that caused no physical injury to person or property, then formulated as a rule that stands as a bar to economic damages unless the damage for which recovery is sought extends beyond the allegedly defective product itself. *See id.* at 1006-07 (citing *Determan*, 613 N.W.2d at 261-62). Travelers has cited no case applying the "economic loss rule" outside of the context of commercial relations or products liability, and the court finds nothing in the rationale for the rule that applies to a claim for insurer bad faith. *See, e.g., Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 127 (Iowa 1984) (noting that the rationale for the "economic loss rule" is the concern that a contrary rule would open the door to virtually limitless suits, often of a highly speculative and remote nature, thus exposing negligent defendants to a severe penalty and producing serious problems in litigation, particularly in the areas of proof and apportionment of damages). Also, the court has found no Iowa cases applying the "economic loss rule" to "intentional torts," such as bad faith failure to pay an insurance claim, *see Tallman v. Hanssen*, 427 N.W.2d 868, 871 (Iowa 1988) (recognizing that bad faith by an insurer is an intentional tort), as opposed to the negligence and strict liability contexts in which it has been recognized. *See Conveyor Co.*, 398 F. Supp. 2d at 1006 (the rule was first recognized in negligence actions and then extended to strict liability actions). Thus, the court finds that the "economic loss rule" stands as no bar to Niver's claim for economic damages for Travelers's bad faith denial of his workers compensation claim.

In short, the court can find no express bar under Iowa law on economic damages for bad faith failure to pay insurance benefits. Rather, the critical question here is not one of admissibility of evidence of economic damages, but whether there is a causal connection between Travelers's bad faith denial of Niver's claim and the economic injuries Niver claims. *See Gibson*, 621 N.W.2d at 397 (the elements for damages for bad faith are proof that the insurer's bad faith was a proximate cause of damage to the plaintiff and the nature and extent of that damage). That question should be left to the jury.

Therefore, this portion of Travelers's motion in limine will also be denied.

## B. Niver's Motion In Limine

Pursuant to the court's order for the parties to renew or amend their motions in limine in light of the narrowing of the issues for trial to damages issues, Niver also filed a Motion In Limine on May 10, 2006 (docket no. 211). Travelers did not resist Niver's motion until May 25, 2006 (docket no. 234), prompting Niver to move to strike Travelers's resistance as untimely (docket no. 235). Thus, the court must first determine whether or not to consider Travelers's resistance to Niver's motion in limine.

### 1.    Travelers's untimely response

It is clear that the February 24, 2006, order setting a "back up" trial date of June 5, 2006, for this case, in the event that the Eighth Circuit Court of Appeals denied Travelers's petition for interlocutory appeal, expressly provided that motions in limine were to be served and filed at least fourteen days before the final pretrial conference on May 24, 2006, and that resistances to such motions in limine were due one week after service of the motion. February 24, 2006, Order Resetting Trial, Final Pretrial Conference And Restating Requirements For Final Pretrial Order (docket no. 193), § XII. It is equally clear that Travelers's resistance to Niver's timely motion in limine was not,

itself, timely filed; indeed, it was some eight days late. Moreover, pursuant to an applicable local rule, "If no timely resistance to a motion is filed, the motion may be granted without prior notice from the court." N.D. IA. L.R. 7.1(f).

Nevertheless, the court deems it appropriate to consider Travelers's untimely resistance to Niver's motion in limine. The court finds that Travelers's belated resistance to Niver's renewed motion in limine essentially mirrors Travelers's June 13, 2005, response (docket no. 154) to Niver's original June 6, 2005, motion to exclude the same categories of evidence (docket no. 151). Thus, Niver has been fully aware of the basis for Travelers's resistance to exclusion of these categories of evidence for the better part of a year. Under these circumstances, to ignore Travelers's response to Niver's renewed motion in limine, because it is untimely, would elevate form over substance and accomplish none of the goals of prompt and certain resolution of issues presented by motion that N.D. IA. L.R. 7.1 was intended to promote. Therefore, the court will not strike, and will consider, Travelers's May 25, 2006, response to Niver's renewed motion in limine.

With that issue resolved, the court turns to consideration of the admissibility of the various categories of evidence that Niver seeks to exclude. Those categories of evidence are the following: (1) evidence of Travelers's prior course of dealing with Niver's other workers compensation claims and the claims of other injured workers; (2) evidence of Niver's sexual activities; (3) any reference to penalty benefits in workers compensation cases; (4) evidence of Niver's disciplinary records with his employer; (5) evidence that Niver received any type of government benefits, such as unemployment insurance; (6) evidence of settlement negotiations; (7) evidence of "fault" of anyone other than Travelers; (8) "windfall" arguments; (9) evidence of unrelated "good" or "charitable" acts by Travelers; (10) argument or evidence that "clear, convincing, and satisfactory

evidence" imposes a "much greater" burden on Niver than a preponderance of the evidence; (11) any reference or argument that Travelers relied upon the advice of its attorney in defending the workers compensation claim and any testimony by attorney Diana Rolands; (12) any evidence acquired by Travelers after the date of the workers compensation arbitration held on October 11, 2002; (13) any "golden rule" or other argument designed to make the jury reach a verdict based upon how such a decision will affect their own lives; (14) any "money tree" argument, testimony, or evidence with respect to annuity contracts or how much could be earned with a sum of money if it were invested at the present time; and (15) any reference to Niver's motion in limine.

2. *Travelers's conduct in dealing with Niver's prior workers compensation claims*

a. *Arguments of the parties*

The first category of evidence that Niver seeks to exclude is evidence of Travelers's prior course of dealing with Niver's other workers compensation claims and the claims of other injured workers. Niver contends that such "course of conduct" evidence is not relevant to his actual or punitive damages pursuant to Rules 401 and 404 of the Federal Rules of Evidence. Moreover, he contends that evidence that Travelers accepted and paid his prior workers compensation claims, besides the 1995 "hernia" claim, the 1999 "knee" claim, and the 2000 "new injury" claim, would confuse the jury and be unfairly prejudicial to him, and therefore, should be excluded pursuant to Rule 403.

Travelers's response is, first, that it is ironic that Niver seeks to bar admission of evidence regarding his 1995 and 1999 workers compensation claims while at the same time seeking to introduce evidence of a pattern and practice of Niver's denial of other people's workers compensation claims. This irony, Travelers argues, demonstrates the unfairness of Niver's position. Travelers also contends that evidence regarding Niver's 1995

"hernia" claim and 1999 knee claim is highly relevant in this case, because the jury must know that Niver was entitled to continuing benefits on such prior claims, and that Travelers originally accepted and paid those claims and stood ready to pay additional medical bills submitted by Curries under either of those claims. Travelers also argues that it is relevant that Niver identified his groin pain as submitted under the 1995, 1999, and 2000 claims.

### b. *Analysis*

The court finds that Travelers's resistance to the admission of this category of evidence is almost entirely misdirected. As the court reads Niver's motion, he seeks to exclude evidence that Travelers accepted and paid any claims *other than* his 1995 "hernia" claim, his 1999 "knee" claim, and his 2000 "new injury" claim, and seeks to exclude evidence of Travelers's handling or course of conduct in handling the workers compensation claims of any other persons. Thus, the court believes that Niver has conceded, and the court certainly finds, that evidence relating to the 1995 "hernia" claim, the 1999 "knee" claim, and the 2000 "new injury" claim is plainly relevant here, including the availability of "continuing" benefits for the first two claims, because such evidence provides the context for Niver's bad faith claim, and is relevant to the extent of Niver's actual damages, Niver's eligibility to receive punitive damages, and the amount of any such punitive damages for Travelers's bad faith denial of his claim for groin pain pursuant to the 1995 "hernia" claim.

On the other hand, Travelers makes no discernible response to Niver's argument for exclusion of evidence relating to any of his *other* workers compensation claims or evidence of anyone else's workers compensation claims. The court agrees with Niver that such evidence is *not* relevant, or if somehow relevant, that its marginal probative value is substantially outweighed by its potential to confuse the jury or otherwise unfairly prejudice

Niver, *see* FED. R. EVID. 402 (irrelevant evidence is not admissible); FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for, *inter alia*, confusing the jury or prejudicing the opposing party), that is, unless it can be shown that the circumstances involved and the handling of the claim of anyone else replicate the circumstances involved and the handling of the claim at issue here. *See Campbell*, 538 U.S. at 422-24.

Therefore, this portion of Niver's motion in limine, properly interpreted, will be granted.

### 3.    *Evidence of Niver's sexual activities*

#### a.    *Arguments of the parties*

Next, Niver seeks to exclude evidence of his sexual activities, including any reference to his sexual history and number of sex partners found in his medical records. Niver contends that there is absolutely no evidence that his sexual history had anything to do with the groin pain that is the subject of the underlying workers compensation claim. Although Travelers delved into this issue in the arbitration hearing, Niver contends that he objected, and more importantly, the Deputy Workers Compensation Commissioner sustained the objection, on the ground that the evidence was irrelevant. Niver asserts that, for the same reasons that such evidence was rejected in the administrative proceedings, it is certainly not relevant to a trial on damages for Travelers's bad faith. Moreover, Niver contends that such evidence is prejudicial in a damages trial, because it is only offered in an attempt to malign his character. Thus, Niver contends that any references to his sexual activities in his medical records should be redacted and that Travelers's counsel should be restricted from arguing that Travelers denied his workers compensation claim based upon his sexual activities.

Travelers, however, contends that evidence presented to the Workers Compensation Commission showed that Niver's medical problems were caused, at least in part, by epididimitis, a condition caused by or transmitted through sexual contact or activities, and other medical conditions in the area of his groin and/or reproductive organs. Travelers contends that the core issue in this case is whether Niver's claim for workers compensation benefits was fairly debatable. That being so, Travelers contends that it is entitled to show that there was conflicting medical evidence regarding the causation of Niver's groin pain, regardless of whether the Workers Compensation Commissioner accepted Travelers's argument in that regard. Travelers contends that it remains entitled to argue to a jury that Niver's claim for workers compensation benefits was fairly debatable.

### b.    *Analysis*

It is apparent, again, that much of Travelers's resistance to this portion of Niver's motion in limine is misdirected. As explained above, in reference to Travelers's own motion in limine, the issues remaining for trial in this case *do not* include whether Travelers could fairly debate Niver's claim for workers compensation benefits for his groin pain. This court has concluded, as a matter of law, that Niver has established that Travelers had no reasonable basis to fairly debate his claim and knew that it had no such reasonable basis to fairly debate his claim as of July 2001. *See Niver*, 412 F. Supp. 2d at 988-92. The issues properly before the jury, again, are whether Niver can show that Travelers's bad faith was a proximate cause of damage to Niver and the nature and extent of that damage, *Gibson*, 621 N.W.2d at 397 (elements for damages for bad faith), as well as whether Travelers's bad faith conduct constituted willful and wanton disregard for the rights or safety of another, such that Niver can recover punitive damages, and the amount of any such punitive damages. *Id.* at 395 (citing IOWA CODE § 668A.1(a) for the standards

for punitive damages). Travelers has offered no argument that evidence of Niver's sexual activity is relevant to any of these remaining issues.

Even if Travelers could show that it had relied, in part, on evidence of Niver's sexual activity as a basis for denying his claim during and after July 2001, the time during which the court concluded, as a matter of law, that Travelers had denied the claim in bad faith—instead of or in addition to its oft-stated beliefs that the groin pain was not work-related, but the result of Niver's exercise routine, and that the claim was fairly debatable because Niver had filed three different petitions for workers compensation benefits for the injury—such that this explanation of why Travelers had done what it did might be relevant to whether its conduct was willful and wanton, the court finds that such evidence should be excluded pursuant to Rule 403. The Eighth Circuit Court of Appeals has noted that "unfair prejudice" within the meaning of Rule 403 means having "'an undue tendency to suggest decision on an improper basis.'" *United States v. Gabe*, 237 F.3d 954, 959-60 (8th Cir. 2001) (analogizing the "unfair prejudice" standard for penalty phase evidence in a death penalty case pursuant to 21 U.S.C. § 848(j) to the standard under Rule 403) (quoting *United States v. Yellow*, 18 F.3d 1438, 1442 (8th Cir. 1994)); *United States v. Mulder*, 147 F.3d 703, 707 (8th Cir. 1998) ("unfair prejudice" under Rule 403 means that the evidence would create an "'undue tendency to suggest decision on an improper basis'") (quoting the Notes of the Advisory Committeee to FED. R. EVID. 403). Evidence of Niver's sexual activity, which is at best only marginally relevant, where Travelers only very belatedly suggested that it was relying on evidence of such activity as indicating a non-work-related cause for Niver's groin pain, plainly has an "undue tendency to suggest decision on an improper basis," dislike of Niver's sexual promiscuity, such that it should be excluded pursuant to Rule 403.

Therefore, this portion of Niver's motion in limine will also be granted.

*4.      References to penalty benefits*

     *a.      Arguments of the parties*

Next, Niver seeks to exclude any reference to penalty benefits in workers compensation cases. Niver asserts that Travelers intends to offer, but should be precluded from offering, evidence that Niver did not claim or obtain penalty benefits on his workers compensation claim. Niver asserts that such evidence is not relevant to any issues to be decided by the jury and would be unfairly prejudicial or misleading. Niver contends that such evidence is misleading, because it improperly suggests a "double recovery" issue. However, he contends that his claim for benefits for the groin pain pursuant to the 1995 "hernia" claim was limited to medical benefits only, because the time limit for any other sort of benefits under the 1995 "hernia" claim had run. Niver also contends that the court has addressed this issue in its March 11, 2005, order denying Travelers's request to certify questions to the Iowa Supreme Court. Thus, Niver contends that any argument by Travelers that he should have sought penalty benefits and cannot proceed on a bad faith claim in the absence of an award of penalty benefits is without merit. Niver also asserts that Travelers should be precluded from arguing that Niver could have sought penalty benefits on his other two claims for benefits for his groin pain, because those other claims were later dismissed and are irrelevant, where the Workers Compensation Commission and the court have held that he could only recover benefits pursuant to the 1995 "hernia" claim.

Travelers responds that any limitation on Niver's claim to medical benefits was self-imposed, because he originally alleged that he could obtain benefits, including penalty benefits, pursuant to two of the three workers compensation claims under which he sought benefits for his groin pain. Travelers also contends that Niver continued to insist that he was entitled to such benefits for more than a year after filing this lawsuit for bad faith.

Travelers contends that, had the Commissioner declined to award penalty benefits on the 1999 "knee" claim or the 2000 "new injury" claim, this lawsuit for bad faith would have been barred by issue preclusion. Travelers also speculates that Niver may have dismissed his other workers compensation claims for benefits for his groin pain, on which he could have obtained penalty benefits, to avoid preclusion of his bad faith claim, if he lost on those claims for penalty benefits. Travelers contends that it retains the right to appeal this court's ruling denying Travelers's motion to certify questions to the Iowa Supreme Court, which raised this issue.

        *b.*     *Analysis*

Niver is correct that this court has already rejected, on the merits, Travelers's contention that Niver was required to obtain penalty benefits before he could pursue his bad faith claim. *See* Order of March 11, 2005 (docket no. 149). That ruling remains the law of the case. Therefore, Travelers's evidence and argument that Niver could or should have pursued such benefits as a prerequisite to his bad faith claim are irrelevant. Indeed, the contention that Niver could or should have sought penalty benefits pursuant to either the 1999 "knee" claim or the 2000 "new injury" claim borders on the ridiculous—and is certainly irrelevant—where the court has found that Travelers acted in bad faith only in failing to pay Niver's claim pursuant to the 1995 "hernia" claim on which penalty benefits were no longer available. Thus, Niver's motion in limine will be granted to the extent that Travelers will be precluded from arguing or offering evidence that Niver could or should have, but did not, pursue or obtain penalty benefits pursuant to either the 1999 "knee" injury or the 2000 "new injury" claim, and that his failure to obtain penalty benefits from

the Workers Compensation Commission somehow demonstrates that Travelers did not act in bad faith or is not liable for damages for bad faith.[3]

On the other hand, this court has also already held that Niver's demands for compensation to which he was not entitled, if his claim was only compensable under the 1995 "hernia" claim, like the filing of his three workers compensation claims, occurred before July 2001, and remained at issue until February 2002, when Niver dismissed without prejudice his administrative petitions concerning the 2000 "new" claim and the 1999 "knee" claim. Thus, the pendency of a demand for benefits to which Niver was not entitled, if his claim was only compensable under the 1995 "hernia" claim, *during and after July 2001* may be relevant to whether Travelers acted in willful and wanton disregard of Niver's rights *during and after July 2001*, and such evidence may be presented. *See Niver v. Travelers Indem. Co. of IL*, ___ F. Supp. 2d ___, 2006 WL 1165865 (N.D. Iowa May 3, 2006) (order, docket no. 206).

### 5. *Niver's disciplinary record*

Next, Niver seeks to exclude any evidence of his disciplinary records with his employer or any testimony, evidence, or argument concerning the fact that he had received any disciplinary actions. Niver contends that he was terminated during the pendency of his workers compensation claim and bad faith lawsuit for the stated reasons that Travelers had denied his workers compensation claim, his time off work for his groin pain was not considered work-related, and he had exceeded his available sick leave. Niver asserts that there was no hint that he was fired for any disciplinary reasons or for bad work product. Thus, Niver contends that any reference to his disciplinary records with Curries is

---

[3]Again, the issue of whether or not Travelers acted in bad faith has already been decided by the court in Niver's favor.

irrelevant. Travelers represents that it has no intention of arguing that Niver would have been terminated by Curries as the result of his disciplinary records, but disputes that Niver is entitled to claim lost wages or earnings in this lawsuit.

Because Travelers represents that it has no intention of offering evidence concerning Niver's disciplinary record with Curries, the court finds that this portion of Niver's motion in limine can be granted by agreement of the parties.

### 6. Niver's receipt of government benefits

Niver next seeks to exclude any evidence that he may have received any type of government benefits, such as unemployment insurance benefits. Niver contends that he applied for and received unemployment benefits after he was released by his doctors to return to work, but had no job to which he could return. He contends that he will have to repay those unemployment benefits, if he is awarded lost wages. However, he contends that any reference to unemployment or other government benefits would simply be confusing to the jury, as it might suggest irrelevant questions about "double recovery." He contends that indemnity to an injured employee from a collateral source cannot be set up as a defense to or in mitigation of damages to that employee. Such an argument, he contends, could provide a windfall to a tortfeasor who has committed an illegal act, by allowing the tortfeasor to escape the full consequences of its actions. Travelers's entire response to this portion of Niver's motion in limine is to refer the court to Section 4 of its own motion in limine.

Travelers's less than pellucid reference to Section 4 of its own motion in limine appears to suggest that the court need not exclude evidence of unemployment benefits or other collateral sources to compensate Niver for lost wages, because lost wages are not available damages on Niver's bad faith claim. However, because the court held above, in reference to the pertinent portion of Travelers's motion in limine, that there is no bar

41

to recovery of economic damages, such as lost wages, on a bad faith claim, and the real issue is whether the plaintiff can show that such damages were proximately caused by the defendant's bad faith denial of his workers compensation claim, not by some other factor, Travelers's response to this portion of Niver's motion in limine is not responsive.

In the absence of any apposite response, the court agrees with Niver that evidence that he may have received compensation in the form of government benefits, such as unemployment benefits, for some of the economic damages he now claims, is not relevant. The common-law collateral source rule would bar admission of such evidence that a plaintiff has received payment from a collateral source. *See, e.g., Ray v. Paul*, 563 N.W.2d 635, 638 (Iowa Ct. App. 1997). Subsequent statutory modification of the collateral source rule for certain personal injury suits or malpractice suits does not appear to be applicable here. *See id.* Therefore, the court will grant Niver's motion to exclude evidence of payments from a collateral source.

### 7. *Settlement negotiations*

#### a. *Arguments of the parties*

Niver also seeks to exclude evidence of settlement negotiations and any argument of counsel designed to make the jury believe that Niver was willing to accept something less than he is asking the jury to award in damages on his bad faith claim. Niver explains that he has no objection to evidence concerning efforts to settle his workers compensation claim, but he contends that evidence of efforts to settle any of the issues currently before the jury, including the amount of any damages or attorneys fees in this bad faith action, would be completely improper. Niver contends that evidence of efforts to settle his bad faith claim is inadmissible pursuant to Rule 408 of the Federal Rules of Evidence. Thus, he seeks an order prohibiting defense counsel from attempting to introduce any exhibits,

elicit any testimony, or make any references to or arguments about any pretrial efforts to settle his bad faith claim or his claim for any damages sought in this action.

In response, Travelers asserts that Niver injected the issue of settlement into this bad faith action by asserting that Travelers's failure to settle his underlying workers compensation claim was in bad faith. Travelers contends that it was Niver's refusal to settle his workers compensation claim that was largely responsible for Travelers's inability to pay his claim for groin pain pursuant to any of the petitions on which he sought benefits for his groin pain. Because Niver alleges that Travelers's refusal to settle his workers compensation claim is at least part of the bad faith conduct alleged, Travelers contends that evidence of attempts to settle the workers compensation claim is plainly relevant.

### b. *Analysis*

Once again, the court finds that Travelers's response to this part of Niver's motion in limine is misdirected, because Travelers's response argues for the admissibility of evidence of attempts to settle the underlying workers compensation claim, which Niver concedes is admissible. What Niver seeks to exclude, and Travelers does not address, is evidence of attempts to settle *the bad faith claim* for any amounts less than Niver now seeks as damages on that claim. The court agrees with Niver that evidence of attempts to compromise or settle *the bad faith claim* are inadmissible pursuant to Rule 408 of the Federal Rules of Evidence. *See* FED. R. EVID. 408 ("Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise *a claim which was disputed* as to either validity or amount, is not admissible to prove liability for or invalidity of *the claim or its amount*. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.") (emphasis added). Therefore, this portion of Niver's motion in limine will also be granted.

### 8. *Evidence of someone else's "fault"*

Niver also seeks to exclude any evidence, argument, suggestion, or insinuation to the jury that Niver, Niver's counsel, some other third party, or some event beyond Travelers's control is somehow at fault or accountable for the conduct by Travelers that the court has held was in bad faith. Niver asserts that comparative fault principles have no application to punitive damages. Travelers apparently agrees, because it states that it will not present any evidence regarding comparative fault. Therefore, this portion of Niver's motion in limine will be granted by agreement of the parties.

### 9. *"Windfall" arguments*

Similarly, Niver seeks to exclude any argument, implication, insinuation, or suggestion to the jury that it should not return a verdict for punitive damages, or should return a smaller verdict, because a verdict for punitive damages would constitute an "unjust reward" or "windfall" for Niver or Niver's counsel. Niver contends that any such evidence or argument would be irrelevant to the issues actually before the jury. Again, Travelers apparently agrees, because it represents that it does not intend to present a "windfall" argument. Therefore, this portion of Niver's motion in limine will also be granted by agreement of the parties.

### 10. *"Good" or "charitable" acts by Travelers*

Next, Niver seeks to exclude evidence or argument that Travelers should not be subject to punitive damages because of its charitable contributions, civic activities, or other "good acts" unrelated to its bad faith conduct in this case. Niver contends that any such evidence is irrelevant to the issues actually before the jury. Again, Travelers agrees that evidence of its unrelated, "good" or "charitable" acts are not relevant, or at least, no more relevant than any evidence presented by Niver of unrelated "bad" or "uncharitable" acts committed by Travelers. The court finds that unrelated "good acts" simply are not

relevant pursuant to Rule 401, and therefore, not admissible pursuant to Rule 402, while unrelated "bad acts," with the exceptions discussed elsewhere, are not admissible pursuant to Rule 404(b). Although there appears to be an agreement of the parties on the admissibility or inadmissibility of such evidence, Travelers has not affirmatively represented that it will not present any such evidence, so that the issue cannot be considered agreed between the parties. Therefore, this portion of Niver's motion in limine will be granted.

      *11.    The meaning of "clear, convincing, and satisfactory evidence"*

Niver also seeks to preclude any argument, evidence, or contention that "clear convincing, and satisfactory evidence" imposes a much greater burden on the plaintiff than a preponderance of the evidence. Niver contends that Iowa cases make clear that "clear, convincing, and satisfactory evidence" is not "much more" than a preponderance. Thus, he contends that evidence or argument that suggests a different quality of evidence than defined in Iowa Civil Jury Instruction 100.19 would be improper and unfairly prejudicial. Travelers represents that it will rely on the form instructions and supporting case law in this regard. This response, however, does little more than beg the question.

Iowa Civil Jury Instruction 100.19 explains that "[e]vidence is clear, convincing and satisfactory if there is no serious or substantial uncertainty about the conclusion to be drawn from it." However, this instruction gives little indication of how this standard of proof compares with a "preponderance of the evidence."[4] Even comparison of this definition to the definition of "preponderance of the evidence" in Iowa Civil Jury

---

[4] It has been this court's practice for many years to use the phrase "greater weight of the evidence" rather than "preponderance of the evidence" in jury instructions, because the court believes that these two formulations of the burden are legally identical, but that the former phrase is clearer for jurors.

Instruction 100.3 does little to clarify the relative burdens imposed.  *See* Iowa Civil Jury Instruction 100.3 ("Preponderance of the evidence is evidence that is more convincing than opposing evidence.  Preponderance of the evidence does not depend upon the number of witnesses testifying on one side or the other.").

Iowa courts have made clear that "[t]he willful and wanton disregard necessary to support an award of punitive damages must be established by clear, convincing, and satisfactory evidence, *a statutorily imposed burden of proof greater than a mere preponderance of evidence*." *Larson v. Great West Cas. Co.*, 482 N.W.2d 170, 175 (Iowa Ct. App. 1992) (citing Iowa Code § 668A.1(1)(a) (1987), and *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983), a case imposing this burden to prove an inter vivos gift or trust) (emphasis added).  The question, of course, is *how much greater* is the burden?

In the context of applying this "clear, convincing, and satisfactory" burden to proof of fraud, the Iowa Supreme Court concluded that the trial court had erred by instructing the jury that this burden was "much more" than a preponderance of the evidence, but less than a reasonable doubt, because "the 'much more' terminology goes beyond that generally used by this Court in defining clear and convincing evidence." *Mills County State Bank v. Fisher*, 282 N.W.2d 712, 715 (Iowa 1979) (citing *Committee on Professional Ethics v. Durham*, 279 N.W.2d 280, 282 (Iowa 1979), but concluding that the error did not constitute an independent ground for reversal).  In the case on which the Iowa Supreme Court relied for the definition "generally used" for "clear, convincing, and satisfactory evidence," the Iowa Supreme Court had defined this burden as "greater than that ordinarily required in civil proceedings but less than that required in criminal cases." *Durham*, 279 N.W.2d at 282.  Thus, Niver is correct that any argument or suggestion that

"clear, convincing, and satisfactory evidence" is "much more" than "a preponderance of the evidence" is a misstatement of the applicable standard of proof.

To avoid misleading or confusing the jury, *cf.* FED. R. EVID. 403 (even relevant evidence may be excluded if its probative value is outweighed by its potential to mislead or confuse the jury), and to avoid any trespass by counsel on the province of the court to instruct the jury on the applicable law and burdens of proof, the court will grant Niver's motion to preclude any argument, evidence, or contention that "clear convincing, and satisfactory evidence" imposes a "much greater" burden on the plaintiff than "a preponderance of the evidence," and the court will also use a prophylactic instruction properly defining this burden of proof.

### 12. *Advice of counsel*

Niver also seeks to exclude any reliance by Travelers on "advice of counsel," because Travelers did not plead such an affirmative defense. Niver also seeks to exclude, specifically, any testimony at trial by attorney Diana Rolands, because Travelers has resisted Niver's attempts to depose her, and because United States Magistrate Judge Paul A. Zoss entered an order on June 24, 2004, stating, "the defendant has stipulated it did not rely on the advice of counsel in denying the plaintiff's claim. The defendant is prohibited from calling Diana Rolands to testify as a witness at the trial of this case." Niver contends that any testimony by Diana Rolands, including any testimony by her concerning a "time line" or sequence of events, should be precluded as irrelevant and potentially prejudicial. Travelers responds that it is agreed that at no time did it rely on the advice of counsel in denying Niver's claim for workers compensation benefits, although Travelers points out that, once litigation was initiated by Niver, Travelers relied on various attorneys, including Diana Rolands, to defend against his multiple petitions for workers compensation benefits

for his groin pain and against his bad faith claim. Again, this response merely begs the question of whether Travelers intends to present any testimony by Diana Rolands.

Resolution of this issue is relatively simple, because Judge Zoss has already ruled that Travelers has stipulated that it did not rely on advice of counsel in denying Niver's workers compensation claim and that Travelers is prohibited from calling Diana Rolands to testify at trial in this case. *See* Order of June 24, 2004 (docket no. 111), 3. The court simply reiterates that Travelers is precluded from relying on advice of counsel as a basis for denying Niver's workers compensation claim and is precluded from calling Diana Rolands as a witness in this case for any purpose. Thus, this part of Niver's motion in limine will be granted.

### 13. *Evidence acquired after October 11, 2002*

#### a. *Arguments of the parties*

Niver also seeks to exclude any evidence acquired by Travelers after the date of the workers compensation arbitration held on October 11, 2002. Niver explains that, in correspondence in June 2005, counsel for Travelers alluded to "significant additional information" that had come into her possession, which she was attempting to verify. However, Niver contends that Travelers has not provided his counsel with any of the information to which Travelers's counsel was referring, contrary to the disclosure requirements of Rules 36 and 26 of the Federal Rules of Civil Procedure. Moreover, Niver contends that his "bad faith" claim is predicated on the unreasonable denial or delay of payment of his claim, based on information in Travelers's possession at the time of the delay or denial. Because the court has concluded that Travelers acted in bad faith during and after July 2001, Niver contends that it would be unfairly prejudicial to allow Travelers to rely on evidence that it did not rely on to support its denial of Niver's claim. In any event, Niver contends that Travelers has never relied on any evidence that it purportedly

acquired after the arbitration hearing in these proceedings as supporting its denial of his claim.

Travelers responds that Niver seeks to preclude Travelers from relying on evidence acquired after the October 11, 2002, arbitration hearing, but clearly intends to submit in support of his claim evidence that he acquired after that date. Travelers contends that allowing Niver to do this is patently unfair and prejudicial to Travelers. While Travelers concedes that it was bound at the arbitration hearing by the evidence that had been disclosed by the parties at that point, there is no such limitation on the evidence that it can now use in these proceedings. To the extent that Travelers has learned that the facts were not as represented by Niver during the course of his workers compensation litigation, and/or to the extent that Travelers has information within its possession or control that supports its defense that Niver's workers compensation claim was fairly debatable, Travelers asserts that it is entitled to present that evidence to the jury. Travelers also argues that it can use any such evidence in rebuttal.

> b.  *Analysis*

Again, Travelers is simply wrong about what issues can be presented to the jury. It is too late for Travelers to argue to the jury, based on any evidence acquired ever, that Niver's claim was fairly debatable, because the court has already ruled that, as a matter of law, Travelers could not reasonably debate, and knew that it could not reasonably debate, Niver's claim during and after July 2001. If Travelers ever had information acquired after October 11, 2002, showing a basis for fairly debating Niver's claim, Travelers has either failed to present any such information or has failed to convince the court that such information demonstrated that Niver's claim was fairly debatable during and after July 2001. Travelers cannot pretend that such information exists, never having disclosed it as required by the rules of discovery and never having previously relied upon

it in these or any other proceedings, to attempt to reopen an issue that the court has decided as a matter of law on a summary judgment record that the parties represented to be complete. Also, Travelers has not previously represented, and is not now representing, that Niver's claim was fraudulent, based on evidence of fraud obtained only after the workers compensation proceedings had terminated. To allow Travelers to rely at trial on some "secret" evidence purportedly acquired after October 11, 2002, which Travelers even now has not identified, would be unfairly prejudicial to an extent that outweighs any marginal relevance that evidence might have to the questions actually at issue at trial. *See* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for unfair prejudice).

There is also no "unfairness" in allowing Niver to present at trial evidence that he acquired after October 11, 2002, via discovery in this lawsuit, about Travelers's conduct and handling of his claim, where Travelers did not make that information available during the administrative proceedings. Niver was entitled to discovery concerning what Travelers knew about his claim and how it handled his claim at the time that Travelers denied his claim, in support of his bad faith claim, even if Niver acquired that evidence after October 11, 2002. Such evidence is relevant and not prejudicial. *See* FED. R. EVID. 401 & 403.

Therefore, Niver's motion to exclude any evidence acquired by Travelers after the date of the workers compensation arbitration held on October 11, 2002, will be granted.

14.    *"Golden Rule" arguments*

Niver seeks to exclude any reference to the "Golden Rule" or other argument concerning how an award in this case affects the jurors, their insurance premiums, or others, on the ground that such evidence is unfairly prejudicial, and hence, excludable pursuant to Rule 403. Travelers represents that it has no intention of making any of the

arguments identified in this portion of Niver's motion in limine. Therefore, this portion of Niver's motion in limine will be granted by agreement of the parties.

### 15. "Money Tree" arguments

Niver also seeks to exclude any "money tree" argument and any testimony, evidence, or argument concerning annuity contracts and/or how much could be earned with a sum of money, if it were invested at the present time. Niver contends that such evidence and argument is unfairly prejudicial, because the intent of such evidence is to improperly influence the jury on the proper measure of damages. In its response, Travelers agrees that, to the extent that damages are presented to the jury, the present value calculation and arguments should be made to avoid confusion.

It is not clear from Niver's motion whether he seeks to exclude all evidence of the present value of future economic injuries, nor is it clear from Travelers's response whether Travelers agrees that certain arguments concerning the growth of money over time are improper. In a "personal injury action," IOWA CODE § 624.18 provides that "future damages of the plaintiff shall be adjusted by the court or the finder of fact to reflect the present value of the sum." However, even assuming, for the sake of argument, that a "bad faith" action is a "personal injury action," the court does not find that Niver seeks *any* future damages in this action. Rather, to the extent that he seeks economic damages, all such damages are identified as "monetary losses" already incurred. Similarly, Niver seeks "emotional distress" damages only from the time of the wrongful conduct until the time of the verdict. Thus, there are no damages at issue in this case that must be reduced to present value, so that there do not appear to be any damages to which a "money tree" or other "annuity" argument would be even remotely relevant.

Therefore, this portion of Niver's motion in limine will be granted.

16.     *References to Niver's motion in limine*

Finally, Niver seeks to exclude any argument or reference before the jury to the effect that his motion in limine has been filed, or to the court's ruling thereon, or any other testimony or argument to the effect that Travelers would like to bring more evidence to the attention of the jury, but the court will not allow Travelers to do so, or any suggestion or implication to the jury that Niver has moved to prohibit proof.  Niver argues that any such evidence or argument would be unfairly prejudicial.  Travelers agrees that presenting evidence regarding prior motions in this case, including *all* motions, not just motions in limine, would be inappropriate.

Although there is agreement on Niver's motion to exclude evidence of his motion in limine, the court finds that Travelers's response raises additional issues.  Just as it would be improper for the parties to refer to Niver's motion in limine, it would also be improper for the parties to refer to Travelers's motion in limine.  However, in the court's view, it will be essential for the jurors to understand the context of the damages issues that remain for their determination for the court to explain its prior ruling in this case regarding Travelers's liability for bad faith denial of Niver's workers compensation claim during and after July 2001.  That being so, the court can and will make such references to its "rulings" without reference to either party's motion for summary judgment.  The court, likewise, believes that any other rulings that establish the law of the case can be noted, where necessary, without reference to the position of either the moving party or the opposing party that gave rise to the pertinent ruling.

Therefore, because the parties agree that references to Niver's motion in limine would be improper, this part of Niver's motion in limine will also be granted by agreement of the parties.

### III. CONCLUSION

Upon the foregoing,

1.      Travelers's May 10, 2006, Amended And Substituted Motion In Limine (docket no. 210), is granted in part and denied in part.  More specifically,

      a.      That part of Travelers's motion seeking to exclude evidence of any records or other information generated during the course of any other first-party bad faith or other case filed or tried against a St. Paul Travelers company as well as evidence of judgments or verdicts entered against any such company in any such other case(s), whether offered in support of Niver's "institutional bad faith" theory of liability or otherwise, is denied;

      b.      That part of Travelers's motion seeking to exclude any reference to, testimony about, or documents regarding Travelers's compensation and/or bonus programs, including, but not limited to, critical success factors program documents, claim incentive plan documents, workers compensation scorecard documents, documents from the personnel files of employees of Travelers, and/or other such similar documents is denied;

      c.   That part of Travelers's motion seeking to exclude evidence regarding what has come to be known as the "Dr. Long report" is granted; however, Niver is entitled to inquire whether Travelers had any medical opinions that supported its denial of his claim and/or whether it had the medical records reviewed by any other doctor *in the ordinary course of handling his claim*, because neither that question nor the answer to it would relate to Dr. Long or his report, and the question and answer are relevant to whether Travelers acted in willful and wanton disregard of Niver's right to fair compensation for a work-related injury;

d.     That part of Travelers's motion seeking to exclude any evidence, testimony, documents, and the like related to any item of damages other than compensatory damages for Niver's alleged emotional distress directly and proximately caused by Travelers's denial of his claim for workers compensation benefits is denied.

2.     Niver's May 25, 2006, Motion To Strike Defendant's Resistance To Plaintiff's Motion In Limine (docket no. 235) is denied.

3.     Niver's May 10, 2006, Motion In Limine (docket no. 211) is granted in part and granted in part by agreement of the parties.  More specifically,

a.     That part of Niver's motion seeking to exclude evidence of Travelers's prior course of dealing with Niver's other workers compensation claims and the claims of other injured workers, as interpreted herein, is granted;

b.     That part of Niver's motion seeking to exclude evidence of his sexual activities, including any reference to his sexual history and number of sex partners found in his medical records, is granted;

c.     That part of Niver's motion seeking to exclude any reference to penalty benefits in workers compensation cases is granted to the extent that Travelers will be precluded from arguing or offering evidence that Niver could or should have, but did not, pursue or obtain penalty benefits pursuant to either the 1999 "knee" injury or the 2000 "new injury" claim, and that his failure to obtain penalty benefits from the Workers Compensation Commission somehow demonstrates that Travelers did not act in bad faith or is not liable for damages for bad faith; however, the pendency of a demand for benefits to which Niver was not entitled, if his claim was only compensable under the 1995 "hernia" claim, *during and after July 2001* may be relevant to whether Travelers acted in willful and

wanton disregard of Niver's rights *during and after July 2001*, and such evidence may be presented;

d.     That part of Niver's motion seeking to exclude any evidence of his disciplinary records with his employer or any testimony, evidence, or argument concerning the fact that he had received any disciplinary actions is granted by agreement of the parties;

e.     That part of Niver's motion seeking to exclude any evidence that he may have received any type of government benefits, such as unemployment insurance benefits, is granted;

f.     That part of Niver's motion seeking to exclude evidence of settlement negotiations and any argument of counsel designed to make the jury believe that Niver was willing to accept something less than he is asking the jury to award in damages on his bad faith claim is granted;

g.     That part of Niver's motion seeking to exclude any evidence, argument, suggestion, or insinuation to the jury that Niver, Niver's counsel, some other third party, or some event beyond Travelers's control is somehow at fault or accountable for the conduct by Travelers that the court has held was in bad faith is granted by agreement of the parties;

h.     That part of Niver's motion seeking to exclude any argument, implication, insinuation, or suggestion to the jury that it should not return a verdict for punitive damages, or should return a smaller verdict, because a verdict for punitive damages would constitute an "unjust reward" or "windfall" for Niver or Niver's counsel is granted by agreement of the parties;

i.     That part of Niver's motion seeking to exclude evidence or argument that Travelers should not be subject to punitive damages because of its charitable

contributions, civic activities, or other "good acts" unrelated to its bad faith conduct in this case is granted;

      j.      That part of Niver's motion seeking to exclude any argument, evidence, or contention that "clear convincing, and satisfactory evidence" imposes a "much greater" burden on the plaintiff than "a preponderance of the evidence" is granted, and the court will also use a prophylactic instruction properly defining this burden of proof;

      k.      That part of Niver's motion seeking to exclude any reliance by Travelers on "advice of counsel" is granted;

      l.      That part of Niver's motion seeking to exclude any evidence acquired by Travelers after the date of the workers compensation arbitration held on October 11, 2002, is granted;

      m.      That part of Niver's motion seeking to exclude any reference to the "Golden Rule" or other argument concerning how an award in this case affects the jurors, their insurance premiums, or others is granted by agreement of the parties;

      n.      That part of Niver's motion seeking to exclude any "money tree" argument and any testimony, evidence, or argument concerning annuity contracts and/or how much could be earned with a sum of money, if it were invested at the present time, is granted;

      o.      That part of Niver's motion seeking to exclude any argument or reference before the jury to the effect that his motion in limine has been filed, or the court's ruling thereon, or any other testimony or argument to the effect that Travelers would like to bring more evidence to the attention of the jury, but the

court will not allow Travelers to do so, or any suggestion or implication to the jury that Niver has moved to prohibit proof is granted by agreement of the parties.

IT IS SO ORDERED.

DATED this 1st day of June, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA